**In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor (Order No. 261).**

**In re INTERVENTION by SHAREHOLDERS of PENN CENTRAL COMPANY.**

**No. 70–347.**

United States District Court, E. D. Pennsylvania.

May 17, 1971.

Marvin Comisky, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for Trustees, Penn Central Transportation Co.

Harold Cramer, Mesirov, Gelman, Jaffe & Levin, Philadelphia, Pa., for Samuel Feldgoise.

David Berger, Philadelphia, Pa., for Richard Robinson and others.

Nathan Lavine, Adelman & Lavine, Philadelphia, Pa., for Security Insurance Co. of Hartford.

Matthew J. Broderick, Dechert, Price & Rhoads, Philadelphia, Pa., for Penn Central Co.

Richardson Blair, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for Girard Trust Bank and Morgan Guaranty Trust Co.

John N. Schaeffer, Jr., Morgan, Lewis & Bockius, Philadelphia, Pa., for Fidelity Bank.

## MEMORANDUM

FULLAM, District Judge.

Certain shareholders of the Penn Central Company have renewed their requests that they be permitted to intervene generally in this proceeding for the reorganization of its wholly-owned subsidiary, Penn Central Transportation Company, under § 77 cf the Bankruptcy Act. All of the stock of the Debtor in reorganization is owned by the parent company. There are approximately 24 million shares of stock of the parent company outstanding, held by some 150,000 shareholders.

The petitioner, Samuel Feldgoise, owns 4,910 shares of the parent company stock. The petitioners, Robinson, et al., are shareholders in the parent company, but the extent of their holdings does not appear.

The parent company, as the sole stockholder of the Debtor, has, of course, been permitted to intervene generally in these proceedings, and its counsel have taken an active role in the matter to date.

In his initial petition for intervention, filed December 21, 1970 (Document No. 610), Mr. Feldgoise proceeded on the erroneous assumption that he was a stockholder of the Debtor, and, in addition to individual intervention, sought permission to form a stockholders' protective committee pursuant to § 77(p) of the Bankruptcy Act (11 U.S.C. § 205(p)). At about the same time, the petitioner filed an application before the Interstate Commerce Commission for approval of such a committee pursuant to the statute. Petitioner informally requested this Court not to act upon his petition until the ICC had rendered a decision.

On February 18, 1971, Mr. Feldgoise filed a supplemental petition (Document No. 853) which (a) clarified and corrected the earlier petition, by alleging that he owned stock in the parent company, rather than in the Debtor; (b) recited that the ICC had not yet acted upon his application; (c) added a claim to have the petition treated as a class action under Fed.R.Civ.P. 23(a) and 23(b) (3); and (d) in separate counts, set forth his contentions that the Debtor should dispose of its railroad operations and retain all non-rail assets.

Finally, on March 19, 1971, Mr. Feldgoise filed a second supplemental petition (Document No. 961) which reaffirms the first supplemental petition, but adds the information that, on or about March 10, 1971, the ICC dismissed his application under § 77(p) for lack of jurisdiction.

The petitioners, Robinson, et al., were previously denied leave to intervene in these proceedings (Order No. 140, entered January 25, 1971). On April 13, 1971, they filed a document styled "Amended Petition of Penn Central Company Stockholders for Leave to Intervene" (Document No. 1099), alleging that intervention is now necessary by reason of the following changes in circumstances: (a) changes of the management structure of the parent company have made it a mere "shell", incapable of adequately representing its shareholders in these proceedings; (b) petitioners are plaintiffs in a separate class action pending in this Court, Civil Action No. 70–2010 "involving Penn Central Company, parent of the Debtor corporation"; and (c) this class action, with a number of other "Penn Central securities cases" has been assigned for pre-trial purposes to the Honorable Joseph S. Lord, III of this Court, by the Judicial Panel on Multidistrict Litigation, pursuant to 28 U.S.C. § 1407, and petitioners' counsel has been designated as one of two liaison counsel for plaintiffs in that group of cases.

Both sets of applications came on for hearing on April 14, 1971. Counsel for

the Trustees, the bondholders, and the institutional investors group, appeared in opposition to these applications. The applications were supported in principle by counsel for Security Insurance Company of Hartford, a substantial shareholder in the parent company, whose application for intervention had previously been denied; this support was limited to the contention that a shareholders' protective committee should be authorized and should be permitted to intervene. Counsel for petitioner, Feldgoise, and counsel for the Robinson group of petitioners, each expressed a willingness to have the other become a part of a shareholders' protective committee effort, but there was sharp disagreement as to who should spearhead such a movement, and as to who should represent it in these proceedings, if intervention were to be authorized.

In essence, the petitioners contend that, for purposes of dealing with their applications to intervene, the Court should disregard the "fiction" of the parent corporation, and treat the petitioners as if they were actually stockholders of the Debtor. Although it may be noted that the present record contains no justification whatever for such an approach, and that such a result might be difficult to fit within the framework of § 77(a) of the Bankruptcy Act, I need not consider this contention. For even if these petitioners were in fact shareholders of the Debtor, they should not be permitted to intervene at this point.

■ It is obvious, indeed it appears to be virtually conceded, that the individual holdings of these petitioners, in relation to the total outstanding, would be insufficient to justify granting intervention, as individuals.[1] Yet they cannot lawfully act on behalf of other shareholders whose combined interests might be sufficient to justify intervention, since they have not obtained the approval of the Interstate Commerce Commission pursuant to § 77(p).

As noted above, Mr. Feldgoise did apply for such approval, but the Commission held:

"* * * since the applicant does not hold stock in such a railroad and does not seek authority to solicit proxies or authorizations to represent stockholders of such a railroad—but rather holds stock in, and proposes to solicit proxies or authorizations from shareholders of the Penn Central Company, a non-carrier holding company which is neither a railroad nor in reorganization—this Commission has no jurisdiction to rule upon the application." (Finance Docket No. 26241 sub-No. 4).

At the hearing in this Court, counsel for Mr. Feldgoise expressly agreed that this ruling by the Commission was correct. The Robinson group of petitioners do not contend otherwise; at any rate, they have never made application to the Commission.

The petitioners cannot have it both ways; clearly, § 77 does not contemplate any form of intervention in a representative capacity except in accordance with § 77(p).

■ On behalf of Mr. Feldgoise, it is argued that his petition should be treated as a "class action" under Fed.R.Civ. P. 23(a) and 23(b) (3). I am satisfied that Rule 23 cannot be thus applied in a railroad reorganization proceeding. Fed.R.Civ.P. 81 and General Order No. 37 make it clear that the Federal Rules apply in bankruptcy only to the extent that they are not inconsistent with the bankruptcy statute. In view of the detailed provisions governing parties acting in a representative capacity, set forth in § 77(p), Rule 23 does not apply. Stated otherwise, Rule 23 could not be applied in bankruptcy in a manner inconsistent with the requirements of § 77(p).

■ The same reasoning is valid with respect to Fed.R.Civ.P. 24, relied upon by the Robinson group. Intervention in

---

1. As shareholders, they would have the right to be heard, but that does not mean

intervention as of right. *See*: Collier on Bankruptcy, ¶ 77.08.

railroad reorganizations is governed by the express provisions of § 77(c) (13). Rule 24 either does not apply at all, or, in any event, cannot be applied to reach a result inconsistent with § 77(p). Counsel have cited *Pennington v. Missouri Pacific Railroad Co.*, 239 F.2d 332 (8th Cir. 1956), as holding that Rule 24 governs intervention in railroad reorganizations. However, at most, that case holds merely that since § 77(c) (13) makes intervention discretionary rather than a matter of right, the application of Rule 24 by analogy means that an order denying intervention is not an appealable order. *See also*: Boston & Providence R. R. Stockholders Development Group v. Smith, 333 F.2d 651 (2nd Cir. 1964).

■ Contrary to petitioners' assertions, there is no inequity in refusing these applications for intervention at this time. There is no reason to suppose that the parent company and its present management will fail to provide adequate representation of the shareholders' interests. Since the stock of the Debtor represents substantially the only asset of the parent company, the parent company could scarcely do otherwise. The petitioners, in any event, may pursue their appropriate remedies to protect their rights as shareholders, vis-a-vis the parent company and its management. Moreover, the rights of shareholders in the parent company are also being assiduously protected by the Trustee of the New York, New Haven & Hartford Railroad Company, one of the largest stockholders in the parent company, who is already a party to these reorganization proceedings.

Denial of intervention does not, as suggested in the Feldgoise brief, reflect a judgment that equity interests are valueless. And I express no view as to whether these petitioners would have standing to file a proposed plan of reorganization, or to appear before the ICC or this Court in connection with any plan of reorganization which may ultimately be proposed. Be that as it may, it seems clear that any action in this respect which may be taken by the parent company, as shareholder of the Debtor, would have to be submitted to its own shareholders for approval. General intervention in the reorganization, with the right to litigate and appeal virtually every action of the Trustees in their conduct of the affairs of the Debtor, should not be extended to these petitioners.