### In re PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, Debtor.

#### Bankruptcy No. 88–00043.

United States Bankruptcy Court, D. New Hampshire.

June 22, 1988.

Order on Pending Motions Regarding Party Status and Intervention
June 22, 1988.

Stutman, Treister & Glatt by Richard Levin, Don Willenburg, Los Angeles, Cal., Sulloway, Hollis & Soden, Martin L. Gross, Concord, N.H., Catherine E. Shively, Manchester, N.H., Cahill, Gordon & Reindel by Thomas R. Jones, Gary W. Wolf, Sp. Counsel, New York City, for Public Service of New Hampshire.

United States Trustee for the Districts of Me., Mass., N.H. and R.I. by Virginia A. Greiman, Boston, Mass., for U.S. Trustee.

Devine, Millimet, Stahl & Branch by Mark W. Vaughn, Manchester, N.H., Office of N.H. Atty. Gen. by Larry M. Smukler, Sr. Asst. Atty. Gen., Concord, N.H., for State of N.H.

Wiggin & Nourie by Anthony C. Marts, Manchester, N.H., for First Fidelity Bank & Amoskeag Bank.

Kramer, Levin, Nessen, Kamin & Frankel by Joel B. Zweibel, Kenneth H. Eckstein, New York City, Deasy & Dwyer, P.A. by J. Michael Deasy, Nashua, N.H., for Unsecured Creditors Committee.

Hinckley, Allen, Snyder & Comen by Joseph M. DiOrio, Providence, R.I., for New Hampshire Consumer Advocate.

Orr & Reno, by Connie L. Rakowsky, Charles A. Szypszak, Concord, N.H., for New England Elec. Systems, et als.

Whitman & Ransom by Richard N. Tilton, Howard J. Berman, New York City, for Equity Committee.

Sanders & McDermott, P.A. by David J. Dunfey, Hampton, N.H., for Citicorp & Consol. Utilities & Communications, Inc.

Goodwin, Procter & Hoar by Christopher T. Katucki, Boston, Mass., for United Illuminating Co. (Seabrook Joint Owners).

McLane, Graf, Raulerson & Middleton by J. Christopher Marshall, Manchester, N.H., Hebb & Gitlin, Michael J. Reilly, Hartford, Conn., for Prulease.

Hughes, Hubbard & Reed by David M. LeMay, Sandor E. Schick, James W. Giddens, New York city, for Orion Royal Bank, Ltd.

John J. Lahey, Vena, Truelove & Lahey, Boston, Mass., for Business and Industry Ass'n of N.H.

## Memorandum Opinion On Section 1109 And Rule 2018 Motions

JAMES E. YACOS, Bankruptcy Judge.

This chapter 11 case is presently before the court upon five motions for determination of party in interest status and/or for intervention. The movants are: (1) the State of New Hampshire through its Attorney General; (2) the State of Connecticut through its Attorney General, and Connecticut's Department of Public Utility Control (DPUC); (3) the Office of the Consumer Advocate of the State of New Hampshire (Consumer Advocate); (4) the Business and Industry Association of New Hampshire (BIA); and (5) the Citizens Within the 10 Mile Radius, Inc., the Seacoast Anti–Pollution League, and the Campaign for Ratepayers' Rights (the "Citizens Groups"). The court has also considered the responses to the above motions, filed by the debtor, Public Service Company of New Hampshire (PSNH), and by the Official Committee of Unsecured Creditors (the Creditors' Committee).

### STATUS GROUNDS ASSERTED

The State of New Hampshire requests that the court find that it has the right to appear and be heard as a party in interest or, alternatively, that the court allow it to intervene generally as an "interested entity". The bases of this request are that the State is a creditor of PSNH; that the State, through its agencies, including the New Hampshire Public Utilities Commission (NHPUC), serves as a primary regulator of PSNH; and that the State, through the Office of the Attorney General, is the principal representative of commercial (business and industrial) and residential electric consumers. Further, the State maintains that it will have a significant role in the formulation of a plan of reorganization for PSNH.

The State of Connecticut requests that the court find that the DPUC is a party in interest or, alternatively, that the court allow the DPUC to intervene generally. The State of Connecticut further requests that the court permit the Attorney General to intervene in the case on behalf of the consumer creditors of the State of Connecticut. The bases for these requests are that the DPUC is the Connecticut agency with the responsibility to regulate utility companies operating in Connecticut and to protect the interests of Connecticut utility ratepay-

ers; that PSNH, as owner of the Millstone Unit 3 Nuclear Generating Facility in Waterford, Connecticut, is subject to the regulatory authority of the DPUC; that the joint ownership of the Seabrook Nuclear Generating Facility (Seabrook), a principal asset of PSNH, by two Connecticut electric utility companies gives Connecticut and its utility ratepayers a direct and substantial interest in this case; that Connecticut ratepayers have paid, through rates, for the investment of Connecticut's utility companies in Seabrook; and that this case may affect the future level of rates required to be paid by Connecticut ratepayers. Additionally, the State notes that the Attorney General is the chief legal officer of the State of Connecticut, with the authority to represent the State, its agencies, and its citizens.

The Office of the Consumer Advocate requests that the court find that it is a party in interest or, alternatively, that the court allow the Consumer Advocate to intervene in this case generally. The bases for this request are that the Consumer Advocate is an independent office created by the New Hampshire Legislature for the purpose of representing the interests of residential utility consumers in any proceeding involving those interests; that the rights and interests of residential utility consumers are not adequately represented by any other party in this case; and that the residential utility consumers will ultimately bear a major part of the consequences of this bankruptcy case.

The Business and Industry Association of New Hampshire requests that the court allow the BIA to intervene generally in this case. The bases for this request are that the BIA is the largest statewide organization representing the interests of business in New Hampshire; and that since 1979 the BIA has formally intervened before the NHPUC on behalf of all business users of electricity in the state. Consequently, BIA maintains that its participation in this case would be constructive, because BIA would add the expertise that it has gained through the years of litigating rate, service, and financial issues before the NHPUC.

The Citizens Within the 10 Mile Radius, Inc., the Seacoast Anti–Pollution League, and the Campaign For Ratepayers' Rights request that the court find that they are parties in interest or, alternatively, that the court allow them to intervene generally as "interested entities". The bases for this request are that this case may affect the future levels of electricity rates in New Hampshire; that this case may affect the licensing process of Seabrook; that these Citizens Groups have actively participated in the rate-setting and licensing processes relating to PSNH and Seabrook for an extensive period of time; and that none of the parties presently before the court can adequately represent the interests of these groups.

The debtor, Public Service Company of New Hampshire, has filed responses to the above motions, requesting that they be denied at this time. The debtor contends that the right of the above entities to appear and be heard should be determined on an issue-by-issue basis, depending upon the nature of the issues involved and the availability of other forums in which the views of these entities may more properly be heard. The debtor avers that "to attempt to determine that [these entities] are parties in interest 'for all purposes' invites confusion and potential disruption to the progress of the case." The debtor maintains that, generally, these entities "are not creditors and, in fact, may assert interests which are opposed to the creditors and shareholders of the debtor's estate." The debtor concedes that to the extent that an entity is a creditor of PSNH it is a party in interest and no order of this court is necessary to accord such status.

While noting that the above entities may properly be heard before regulatory agencies charged with fulfilling the public interest, the debtor maintains that their status before this court must be limited to those circumstances, if any, in which this court is requested to exercise its power to the exclusion of the state and federal agencies in an area traditionally reserved to those bodies. The debtor further contends that, insofar as the entities assert a need to repre-

sent consumer interests, the bankruptcy rules have already established the appropriate procedure for representation of consumer creditors, by allowing for intervention by the Attorney General of a State.

The Official Committee of Unsecured Creditors has filed responses similar to those of the debtor. The Creditors' Committee does not oppose granting the State of New Hampshire and the State of Connecticut, through their Attorney Generals, the right to appear and be heard to the extent that this case affects the states' pecuniary interests as creditors. Generally, however, the Creditors' Committee contends that the entities' party in interest status should be determined on an issue-by-issue basis and should be recognized only in those instances where, on particular issues, an entity can demonstrate a need and reason to be heard. The Creditors' Committee opposes the motion by the Citizens Groups on the grounds that they are neither creditors nor equity security holders, and because they have not shown that their concerns cannot be adequately addressed by state and federal regulatory agencies.

The Creditors' Committee also opposes the motion of the Consumer Advocate on the grounds that the Consumer Advocate has no standing to generally appear on behalf of residential utility consumers in this case, and that residential utility consumers are not creditors in this case. The Creditors' Committee states that, even if they were found to be creditors, residential utility consumers would be adequately represented by the New Hampshire Attorney General pursuant to Bankruptcy Rule 2018(b). Similar to its position regarding the States of New Hampshire and Connecticut, the Creditors' Committee contends that the Consumer Advocate's party in interest status should be determined on an issue-by-issue basis and should be allowed "only if specific adversary proceedings or contested matters arise which clearly affect rates, charges, tariffs, or consumer services." The Creditors' Committee

states that "[b]ankruptcy is a forum for adjusting debtor-creditor relationships [and] it should not operate to impose a greater burden of regulatory involvement in a debtor's affairs than would be the case absent bankruptcy." Finally, the Creditors' Committee states that the Consumer Advocate will have a right to be heard—in the state regulatory proceedings.

## CODE AND RULE PROVISIONS

The participation of parties in interest in Chapter 11 cases is governed by section 1109 of the Bankruptcy Code, 11 U.S.C. § 1109. In particular, section 1109(b) provides:

A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

■ Section 1109 lists certain entities that are considered to be parties in interest, however the list is nonexhaustive. Section 102(3), 11 U.S.C. § 102(3), states that the term "including" is not limiting; therefore, the use of the word "including" in section 1109(b) does not limit "party in interest" status to those parties specifically referred to in the subsection.

■ Although the term "party in interest" has not been defined anywhere in the Bankruptcy Code or Rules, it is to be construed broadly, in order to allow parties affected by a chapter 11 case to appear and be heard. *See In re Johns–Manville Corp.*, 36 B.R. 743 (Bankr.S.D.N.Y.1984), *In re Athos Steel and Aluminum, Inc.*, 69 B.R. 515 (Bankr.E.D.Pa.1987), *In re Amatex Corp.*, 755 F.2d 1034, 30 B.R. 309 (3d Cir.1985), 5 *Collier on Bankruptcy* ¶ 1109.02[3] at 1109–23, 1109–24 (15th ed. 1988).[1] As the bankruptcy court noted in the *Johns–Manville* case, "[T]he concept of 'party in interest' is an elastic and broad

---

1. *Colliers* states: "Section 1109(b) must be construed broadly to permit parties affected by a chapter 11 case to appear and be heard. The courts have generally so construed the sections of the Bankruptcy Act and Rules of Bankruptcy Procedure concerning standing to be heard." *Id.* at 1109–24.

one designed to give the Court great latitude to insure fair representation of all constituencies impacted in any significant way by a Chapter 11 case." *In re Johns–Manville Corp.*, 36 B.R. 743, 754 (Bankr.S.D.N.Y.1984). The basic test under section 1109(b) is "whether the prospective party in interest has a sufficient stake in the outcome of the proceeding so as to require representation." *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir.1985).

There are some 46 references to "party in interest" within the Bankruptcy Code and the Bankruptcy Rules. Some of the more important attributes of that status are summarized in 5 *Collier on Bankruptcy* ¶ 1109.02, p. 1109–23, fn. 23 (15th ed. 1987), as follows:

The significance of "party in interest" status in a chapter 11 case is that a party in interest may request an appointment of a trustee or examiner under section 1104(a) and (b); may request termination in a trustee's appointment under section 1105; may request conversion of the chapter 11 case to a case under chapter 7 or 13 of the Code pursuant to section 1112(b); may file a plan under section 1121(c) and may request an extension of the debtor's time to file a plan under section 1121(d); may object to confirmation of a plan under section 1128(b); and may request revocation of an order of confirmation under section 1144 of the Code.

The participation of intervenors in Chapter 11 cases is governed by Bankruptcy Rule 2018. Bankruptcy Rule 2018 provides:

(a) *Permissive Intervention.* In a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter.

(b) *Intervention by Attorney General of a State.* In a chapter 7, 11, or 13 case, the Attorney General of a State

may appear and be heard on behalf of consumer creditors if the court determines the appearance is in the public interest, but the Attorney General may not appeal from any judgment, order, or decree in the case.

■ Permissive intervention under Rule 2018(a) may be permitted upon a showing of cause. As noted in 8 *Collier on Bankruptcy* ¶ 2018.03[3] at 2018–7 (15th ed. 1988): "The cause is an economic or similar interest in the case or one of its aspects. Intervention might also be permitted to an entity based on that entity's concern with precedential ramifications of an aspect of a case such as a state concerned with possible conflicts between Chapter 11 and state regulatory policies."

The factors that courts have considered in determining whether to grant permissive intervention are whether the intervenor's interests are already adequately represented, and whether intervention would result in undue delay or prejudice to the original parties. *See In re Longfellow Industries, Inc.*, 76 B.R. 338, 341 (Bankr.S.D.N.Y. 1987), *In re Hyde Park Partnership*, 73 B.R. 194, 197 (Bankr.N.D.Ohio 1986), *In re George Rodman, Inc.*, 33 B.R. 348, 350 (Bankr.W.D.Okl.1983), C. Wright and A. Miller, *Federal Practice and Procedure* § 1913 at 552.[2]

■ Intervention by an attorney general of a state under Rule 2018(b) may only be allowed if such intervention is for the benefit of consumer creditors, and if the court determines that appearance by the attorney general is in the public interest. Bankruptcy Rule 2018(b), 8 *Collier on Bankruptcy* ¶ 2018.04 at 2018–9, 2018–10 (15th ed. 1988). "While 'consumer creditor' is not defined in the Code or elsewhere, it would include the type of individual entitled to priority under § 507(a)(5) of the Code, that is, an individual who has deposited money for the purchase, lease or rental of property or the purchase of services for the per-

---

**2.** Bankruptcy Rule 7024, which makes Fed.R. Civ.P. 24 applicable to adversary proceedings, does not govern the instant situation, however it also deals with the concept of permissive intervention and provides the following standard:

"In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed.R.Civ.P. 24(b).

sonal, family, or household use of the individual. It would also include individuals who purchased or leased property for such purposes in connection with which there may exist claims for breach of warranty." Bankruptcy Rule 2018, Advisory Committee Note (1983).

If the intervention is other than on behalf of consumer creditors, the attorney general of a state may seek to intervene pursuant to Rule 2018(a). 8 *Collier on Bankruptcy* ¶ 2018.04 at 2018–9, 2018–10. An attorney general of a state also may appear and be heard as a party in interest. *Id.* However, "[t]he fact that the attorney general is a party in interest in the case or has intervened otherwise does not eliminate the need to intervene under Rule 2018(b) if the purpose is to be heard on behalf of consumer creditors." *Id.*

## THE REGULATED UTILITY DEBTOR

Inasmuch as there have been no reorganization cases in the federal bankruptcy courts involving private investor-owned regulated monopoly utility companies, and inasmuch as even the utility reorganization cases from the 1930's involved facts and statutes entirely distinct from the facts of this case and from the present statute, there is a complete dearth of decisional law with regard to what entities might be deemed parties in interest or qualified intervenors in a chapter 11 proceeding involving such a debtor utility company such as PSNH.

One commentator finds a basis for a broad reading of those entities entitled to representation in a utility bankruptcy reorganization by analogizing to other recent trends in reorganization cases and to particular factors relating to a utility reorganization. Professor Theodore Eisenberg in his article, *Bankruptcy In The Administrative State*, 50 Law & Contemp. Problems 3, 25–26 (Spring 1987) (footnotes omitted), states his view as follows:

A bankruptcy court may broaden representation in two ways. First, it can expand the number of groups given a voice in proceedings affecting the debtor. In the asbestos bankruptcies, a crucial question has become whether asbestos workers with future claims, claims that would not be actionable under state law at the time of the filing of the bankruptcy petition, may or must be represented in the companies' reorganization proceedings. In a nonbankruptcy setting, there is no formal mechanism through which to give such an inchoate interest a current voice.

The role of interested but underrepresented parties is likely to become an important question in a utility bankruptcy. For example, ratepayers are the prime source of funds for a regulated utility, and a utility in trouble will be looking to rate increases to bail itself out. Outside bankruptcy, the ratepayers' point of view may be presented to the regulatory authority. But the case for allowing only the authority to speak for the public diminishes once the authority has approved actions leading to the bankruptcy. The question that arises is whether ratepayers are entitled to independent representation in the bankruptcy proceedings.

In bankruptcy, however, ratepayers lack the formal status of creditor or shareholder and are not likely to be viewed as holders of claims (debts) or interests (equity), the groups normally entitled to representation in bankruptcy. The Bankruptcy Code does provide for representation of a "party in interest," a concept seemingly broader than that of claim or interest, who may be heard on any issue in a bankruptcy case. Ratepayers of a regulated utility are strong candidates for "party in interest" status. Much of the debate in the utility industry focuses on how to allocate the cost of burdensome facilities between investors and ratepayers. Ratepayers will be involuntarily funding the plan, directly or indirectly, and should be granted a fresh, formal voice in the proceedings.

A somewhat narrower view is expressed in Flaschen & Reilly, *Bankruptcy Analysis of a Financially-Troubled Electric Utility*, 22 Hous. L.Rev. 965, 971–973 (1985) (footnotes omitted), as follows:

One of the first issues to arise in the Utility's bankruptcy will be the extent to which interested parties can participate in the reorganization process. A number of "parties in interest" are entitled to raise and be heard on any issue in a reorganization scheme. Such parties include the debtor; the trustee, if one is appointed; any indenture trustees, secured and unsecured creditors and their representative committees; and shareholders and their representative committees.

In an electric utility reorganization, additional entites such as state and federal regulatory agencies and ratepayer groups may seek "party in interest" status. Although the reorganization court may desire to permit representatives of such groups to be heard because of the strong public interest in the cost and availability of electric service, it is unclear whether such groups are proper "parties in interest" under the Bankruptcy Code. While regulatory agencies and ratepayers certainly are "interested" in a utility, they do not have the same direct financial investment in a utility as its creditors and shareholders. Furthermore, it can be argued that ratepayers are already protected, or at least represented, by the PUC with respect to rate-related issues.

There is little precedent or analogous law to assist in the determination of whether ratepayer groups are true parties in interest. Although clearly interested in the outcome of the Utility's organization proceedings, ratepayers arguably lack a strong enough investment in a utility to warrant an independent and unfettered voice in the reorganization. The reorganization process is more concerned with a fair and efficient adjudication of creditor and investor rights in a financially troubled company than it is with the rights of its customers. On the other hand, ratepayers are not ordinary customers because they have no choice but to accept and pay for the product a utility supplies at the price established by the PUC. In the final analysis, however, ratepayers are primarily concerned with rates, and, as the next section of this article suggests, the bankruptcy court should normally defer its decision with respect to rate-related matters to the PUC. The PUC is probably a more appropriate forum for ratepayer concerns than the bankruptcy court.

A stronger argument for full right of participation in bankruptcy proceedings can be made on behalf of regulatory agencies because of their nonbankruptcy jurisdiction over the affairs of the utility. An analogy can be made to the role of the Securities and Exchange Commission ("SEC") in a reorganization as a representative of the public interest. While the SEC is not a statutory "party in interest," it is entitled to raise and be heard on any issue in a reorganization but cannot appeal from any court judgment, order or decree. The same status is accorded to various regulatory commissions in a railroad reorganization. It is suggested, therefore, that even if they are not true "parties in interest," regulatory agencies (including, perhaps, consumer advocates appointed pursuant to state statute) should be accorded a status similar to the SEC and railroad regulatory commissions as representatives of the public interest. A court, pursuant to Bankruptcy Rule 2018(a) and its powers as a court of equity, could fashion an order granting regulatory agencies the right to be heard on relevant issues, but not granting the right to appeal a decision or to propose a plan of reorganization.

For obvious reasons, as noted above, neither of the foregoing commentators cites any significant case decisions in support of their respective views, with the exception of the citation of *In re Casco Bay Lines, Inc.*, 14 B.R. 18, 19 (Bk'y App.Me.1981) in support of the last sentence quoted above in the Flaschen & Reilly article.

## THE PRESENT REORGANIZATION CONTEXT

The necessary factual background and legal and economic factors relevant to a reorganization of a debtor of the nature of

PSNH has been set forth at length in this court's Memorandum Opinion On Plan Exclusivity Extension entered separately this date 88 B.R. 521. In order to avoid a similar recitation in this opinion, the recitation from the exclusivity opinion is incorporated by reference into this opinion.

## GENERAL ANALYSIS

As indicated in the preceding section of this opinion, the general case law dealing with § 1109(b) of the Bankruptcy Code and Rule 2018(a) of the Bankruptcy Rules authorizes a very broad and elastic interpretation as to those entities entitled to party in interest status or intervenor status—in the discretion of the court to suit the particular case before it. *See* discussion *supra* at 550–551, and case law cited therein.

However, it is equally important that the court take care not to be so liberal in granting such applications as to over-burden the reorganization process by allowing numerous parties to interject themselves into the case on every issue, to the extent that the goal of a speedy and efficient reorganization is hampered. *See In re Hyde Park Partnership,* 73 B.R. 194 (Bankr.N.D.Ohio 1986) (in determining whether to grant intervention, a court should consider whether there would be undue delay of the proceedings, whether new issues would be raised, and whether there would be any prejudice to the original parties); *In re Charter Co.,* 50 B.R. 57 (Bankr.W.D.Texas 1985) (principal consideration is whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties); *In re Citizens Loan & Thrift Co.,* 7 B.R. 88 (Bankr. N.D.Iowa 1980) (court exercised its discretion allowing intervention only where intervention would not cause undue delay or expense); *Manufacturers Trust Company v. Kelby, et al.,* 125 F.2d 650, 655 (2d Cir.), *cert. denied,* 316 U.S. 697, 62 S.Ct. 1293, 86 L.Ed. 1766 (1942) (court should examine requests for intervention to see if there is danger of confusion arising from the presence of too many parties and if there would be prejudice due to the possible increases in allowances and costs).

Also, *see generally In re Longfellow Industries, Inc.,* 76 B.R. 338, 341 (Bankr.S.D. N.Y.1987), *citing In re George Rodman, Inc.,* 33 B.R. 348, 350 (Bankr.W.D.Okl. 1983), *quoting* C. Wright and A. Miller, *Federal Practice and Procedure,* § 1913 at 552 (in determining whether to allow intervention, "the primary consideration [is] 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties'"). The test for whether a party is "affected" by the proceedings (*see* discussion *supra* at 550–551) must be interpreted in light of this requisite balancing of competing principles.

One thing that seems relatively clear from the case law is that courts generally try to avoid deciding party in interest and intervention questions in the abstract, i.e., in the absence of a specific context within the reorganization proceeding as to which the determination is relevant. The movants have not cited any case in which party in interest status was generally determined at the outset of a reorganization proceeding. Likewise, decisions concerning intervenor status generally have involved limited intervention as to specific matters, rather than an order granting general intervention.

*See, e.g., Matter of Marin Oil, Inc.,* 689 F.2d 445, 447, & C.B.C. 2d 470, 472–73 (3d Cir.1982), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983) (bankruptcy court limited the intervenor to filing of briefs); *In re Casco Bay Lines, Inc.,* 14 B.R. 18, 18–19 (Bk'y App.Me.1981) (discussion of bankruptcy court order in which intervenor was limited to "general, nonadversary proceedings relating to the general operation of the business of the debtor ... [and] to proceedings relating to confirmation....");  8 *Collier on Bankruptcy* ¶ 2018.03[3] at 2018–7 and 2018–8 (15th ed. 1987). *But see In re Citizens Loan & Thrift Co.,* 7 B.R. 88 (Bankr.N.D.Iowa 1980) (State of Iowa *ex rel* State Auditor allowed to intervene generally).

In the present case, the court *sua sponte* early on questioned the wisdom of deciding such matters at the outset of the proceeding, rather than deferring until concrete

questions were presented within specific contexts as this case unfolds. (*See Transcript of PSNH Hearing*, February 26, 1988, at pp. 104–105.)

■ After reviewing the record from various hearings relating to the pending motions, and after considering the complexities of this case along with the other factors involved in reaching a plan of reorganization, as set forth in the separate exclusivity decision referred to above, I conclude that the path of wisdom *is* to defer deciding these matters until they can be presented in more specific contexts— with the three exceptions indicated in the remaining portion of this opinion.

To this extent I agree with the positions taken by the debtor and by the Creditors' Committee that there is simply no need to make such determinations at this stage of the proceedings. Indeed, as the case has developed it has become apparent that all parties present at the various hearings generally *are* heard if they so desire. There have been very few objections by the debtor or the Creditors' Committee to parties being heard. There will be time enough to resolve any such disputes when and if they occur as to specific matters.

### EXCEPTION AS TO STATE OF NEW HAMPSHIRE

■ Notwithstanding my general views expressed above, I believe an exception must necessarily be made with regard to the State of New Hampshire. The State of New Hampshire, unlike all other parties involved, has a statutory basis for being involved in this reorganization. *See* 11 U.S.C. § 1129(a)(6) (requiring the approval of the pertinent regulatory agency as to any rate changes involved in the debtor's plan of reorganization). The State of New Hampshire and its regulatory agency (the PUC) are further implicated in this bankruptcy proceeding due to questions concerning the debtors' regulatory compliance within the meaning of 28 U.S.C. § 959, as

the debtor prior to any plan of reorganization operates its business, sells assets, and engages in other activities that arguably are subject to the jurisdiction of both of the state regulatory agency and of this federal court. The matter pending before this court concerning refund of consumer deposits which raises questions of state-defined "tariffs", as opposed to questions of paying "prepetition claims" prior to a plan, illustrates this perplexing dichotomy. I therefore agree with the assertion by counsel for the State of New Hampshire that the debtor and the Creditors' Committee have their heads "hidden in the sand" when they argue that the State of New Hampshire is not a party in interest in every practical sense in this unique reorganization. *Cf. In re Citizens Loan & Thrift Co.*, 7 B.R. 88 (Bankr.N.D.Iowa 1980) (State of Iowa *ex rel* State Auditor allowed to intervene generally, because the auditor is the entity charged by Iowa law with the duty of supervision of the debtor, and because the state's intervention "might well save the time and resources of the Court and of the other parties.").

The debtor and the Creditors' Committee argue that the concept of "party in interest" in bankruptcy reorganization has been interpreted generally to mean parties involved in a creditor-debtor or stockholder-debtor relationship. On a close reading, however, the decisions cited for this proposition, i.e., *In re Comcoach Corp.*, 698 F.2d 571 (2d Cir.1983), *In re UNR Industries Inc.*, 71 B.R. 467 (Bankr.N.D.Ill.1987), and *In re Johns–Manville Corp.*, 36 B.R. 743 (Bankr.S.D.N.Y.1984), *aff'd*, 52 B.R. 940 (S.D.N.Y.1985), do not support that proposition by specific holdings, but at best by general language and/or dicta. No square holding by any court has been cited that stands for the proposition that a "non-creditor" or "non-stockholder" entity is not qualified for a party in interest status under § 1109 of the Bankruptcy Code or for intervenor status under Bankruptcy Rule 2018.[3]

---

3. As it happens the State of New Hampshire alleges that it *is* a creditor of PSNH because it has a claim for a NHPUC assessment due from the debtor in the amount of $236,292.00; be-

cause the debtor owes the State of New Hampshire franchise taxes in the amount of 1 percent of the debtor's New Hampshire gross receipts in an amount listed by the debtor on its A–1 sched-

The debtor and the Creditors' Committee also argue that the numerous assertions by the State of New Hampshire in its pleadings, concerning the "public interest" that the State of New Hampshire must protect, are irrelevant for present purposes inasmuch as § 1129 of the present Bankruptcy Code no longer contains an explicit confirmation requirement that the plan be found to be in the public interest. It is true that Chapter X of the prior Bankruptcy Act included such a specific provision with regard to corporate reorganizations. However, the dropping of that specific requirement in the provisions of the *merged* chapter 11 of the present Bankruptcy Code (incorporating the reorganization provisions of Chapters X, XI, and XII of the prior Act) does not *necessarily* support a determination that public interest is no longer a relevant factor in a reorganization proceeding in the bankruptcy courts.

Chapter 11 of the new Code has also dropped the specific requirement of chapter X of the old Act to the effect that a petition for a reorganization had to be filed in good faith. That omission has not prevented the great majority of courts from reading an implicit requirement into the present Code. *See In re Victory Const. Co., Inc.*, 42 B.R. 145 (Bankr.C.D.Cal.1984), and its succeeding line of cases, e.g., *Matter of Winshall Settlor's Trust*, 758 F.2d 1136, 48 B.R.

[112] (6th Cir.1985), *Matter of Little Creek Development Co.*, 779 F.2d 1068, 1072, 55 B.R. [90], [94] (5th Cir.1986), and *In re Natural Land Corp.*, 825 F.2d 296, 298, 76 B.R. [64], [66] (11th Cir.1987).

It is not necessary for present purposes to define exactly when, how, and to what extent the consideration of the public interest may be a determinative factor in the conduct and the resolution of these reorganization proceedings. It suffices to note that it is at least arguable that the public interest factor still must be considered by the reorganization court in a case having a manifest public impact.[4]

EXCEPTION AS TO CONSUMER ADVOCATE AND BIA

◼ While the Attorney General for the State of New Hampshire represents all electric service consumers before the NHPUC regarding utilities such as PSNH, New Hampshire's statutes have also created a semi-independent Office of the Consumer Advocate to present especially the position of *residential* electric consumers for that agency. *See* New Hampshire RSA 363:28. The record before this court also indicates that the Business and Industry Association, while not granted comparable statutory status, has regularly appeared before the NHPUC to present the special viewpoint of *industrial and commercial*

---

ule in the amount of $606,978.00; and because the debtor owes the Industrial Development Authority an annual fee for the issuance of pollution control bonds in the amount of $25,000.00. However, I do not deem it necessary to determine the State of New Hampshire "creditor" status for present purposes inasmuch as sufficient other grounds to support their pending motion exist in this record independent of that status.

4. The record in this case indicates that PSNH serves in excess of 350,000 electrical users in the State of New Hampshire, comprising some 71 percent of the State's residential electricity consumers, 82 percent of the State's commercial electricity consumers, and 81 percent of the State's industrial electricity consumers. The debtor's revenues constitute more than 75 percent of the total retail electric service revenues of the State's utilities.

With regard to the question of continuing vitality of the "public interest factor" in chapter 11 reorganizations, *see,* H.R.Rep. No. 95–595, 95th

Cong., 1st Sess. pp. 5, 109, 220, 224, 228 (1977), U.S.Code Cong. & Admin.News 1978, 5787:

The bill consolidates all four chapters into one business reorganization chapter (with some special provisions for railroad reorganizations) and rationalizes the various forms of relief available to a failing business, making a business reorganization a quicker, more efficient procedure, and providing greater protection for debtors, creditors, and the public interest.

*See, also NLRB v. Bildisco & Bildisco,* 465 U.S. 513 [104 S.Ct. 1181, 79 L.Ed.2d 482], 36 B.R. [131], 9 C.B.C.2d 1219, 1222, fn. 1 (1984); *Matter of Little Creek Development Co.,* 779 F.2d 1068, 1071 (5th Cir.1986), *citing and quoting American Ins. Co. v. Avon Park,* 311 U.S. 138, 145 [61 S.Ct. 157, 161, 85 L.Ed. 91] (1940); *A.H. Robbins Co. v. Piccinin,* 788 F.2d 994, 59 B.R. [144], 15 C.B.C.2d 235, 239, 253 (4th Cir.1986). *Cf. also* 11 U.S.C. § 1129(a)(3) (requiring for confirmation that a plan has been "proposed in good faith....").

electric service customers before that agency. In both instances such representation has primarily focused upon rates and tariffs and the effects of same upon their respective constituencies. In so doing, the Consumer Advocate and the BIA have gained a certain expertise in that regard.

Both the Consumer Advocate and the BIA request full party in interest status and/or general intervenor status. Those requests ask too much, because the general representation of the public interest and of the ratepayers of New Hampshire can and will be accomplished in this proceeding by the State of New Hampshire under the full party in interest and general intervenor status granted to it by this decision. However, I believe that these two entities can provide some aid to this court by evaluating various reorganization proposals from their respective viewpoints and special expertise. For that reason, each of these entities will be granted limited intervention rights under Bankruptcy Rule 2018(a) in order that they may provide the court with advice and information regarding the effect on the rates of their particular constituencies of proposals otherwise before the court in these proceedings.

It should be noted that granting this limited intervention right to the Consumer Advocate is not intended to conflict with or supercede the statutory responsibility of the Attorney General for the State of New Hampshire to represent all electric service customers of a regulated utility. The intent is simply to give the court an additional voice as an aid in evaluating matters affecting various types of ratepayers and their interests to the extent that such evaluation becomes necessary.

## CONCLUSION

Based on the foregoing factors, the court concludes that all of the pending motions should be denied without prejudice, subject to the specific exceptions noted above. The denials without prejudice will permit the assertion of the relevant requests, as the parties may be advised, in appropriate specific contexts during the further course of these proceedings.

The State of New Hampshire will be granted full party in interest status under § 1109(b) of the Bankruptcy Code and will be granted general intervenor rights under Rule 2018(a) of the Bankruptcy Rules. In this regard, I find that, rather than burdening the reorganization process of a regulated electric utility, the granting of such status and rights to the State of New Hampshire should expedite the progress of this reorganization proceeding. The intended result of this ruling is to grant the State of New Hampshire an unquestioned place at the bargaining table in the process of plan formulation. Taking that place at the bargaining table will necessarily force the State of New Hampshire to come to grips with various legal and factual issues which could otherwise significantly delay the reorganization process.[5]

The request for party in interest status determination by the Consumer Advocate and by the BIA will be denied without prejudice, and their respective motions for intervention will be granted to the limited extent indicated above.

Nothing in this opinion is intended to determine whether a particular party is or is not one of the specifically *listed* parties in interest pursuant to the provisions of § 1109(b) of the Bankruptcy Code. Moreover this court, in granting party in interest status or intervenor status, does not determine whether the grantee does or does not have standing to appeal any orders of this court. That is a separate question. *Cf. In re El San Juan Hotel,* 809 F.2d 151 (1st Cir.1987). Only one reported case has purported to limit appeal rights of an intervenor and that case involved an agreement to waive appeal rights on the record. *See In re Casco Bay Lines, Inc.,* 14 B.R. 18 (Bk'y App.Me.1981). On reflection, notwithstanding the various colloquies between the parties and the court during the course of the hearings on the pending motions, I do not believe it appropriate for the reorganization trial court to attempt to

5. *See,* Memorandum Opinion On Plan Exclusivity Extension, 88 B.R. 521, 542, fn. 23 (1988).

pre-determine that matter for the appellate courts.

A separate order implementing the foregoing determinations shall be entered.

### ORDER ON PENDING MOTIONS REGARDING PARTY STATUS AND INTERVENTION

With regard to the pending motions for determination of party-in-interest status under § 1109(b) of the Bankruptcy Code and of intervenor status under Rule 2018 of the Bankruptcy Rules, as set forth in the Memorandum Opinion on the same entered separately this date, and pursuant to the findings and conclusions contained therein, it is accordingly

ORDERED, ADJUDGED and DE-CREED as follows:

1. The motion of the State of New Hampshire is granted in both respects, i.e., said entity is determined to be a party in interest within the meaning of § 1109(b) of the Bankruptcy Code in the circumstances of this case and is authorized to intervene generally pursuant to Bankruptcy Rule 2018(a).

2. The motions by the Office of the Consumer Advocate of the State of New Hampshire and by the Business and Industry Association of New Hampshire are granted only to the extent that said entities are authorized to intervene specially pursuant to Bankruptcy Rule 2018(a) to provide this court with advice and information regarding the effect on the rates of their particular constituencies of proposals otherwise before the court in this proceeding.

3. All other pending motions under § 1109(b) and Rule 2018 are hereby denied without prejudice.

DONE and ORDERED this 22nd day of June, 1988 in Manchester, New Hampshire.