### In re RIVER BEND–OXFORD ASSOCIATES, Debtor.

### Bankruptcy No. 89–4–0668–SD.

United States Bankruptcy Court, D. Maryland, at Rockville.

May 8, 1990.

Stephanie Wickouski, Bethesda, Md., for debtor.

Charles A. Docter, Loren Chumley, Docter & Docter, P.C., Kensington, Md., and Leon S. Forman, and Bonnie Glantz Fatell, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for Walnut G Corp. and Penn Mut. Life Ins. Co.

Daniel M. Litt, Washington, D.C., for Leo Zickler.

Clifton R. Jessup, Jr., Dixon & Dixon, Dallas, Tex., and Kathy M. Britton, Fugett & Associates, Baltimore, Md., for Aetna Ins. Co.

MEMORANDUM OF DECISION

E. STEPHEN DERBY, Bankruptcy Judge.

This matter raises the question whether a second tier owner is a party in interest within 11 U.S.C. § 1121(c) which is eligible to sponsor a debtor's plan of reorganization.

*Facts*

Debtor is a general partnership with two partners—Leo Zickler and River Bend Partners, a limited partnership. Leo Zickler holds a .5% interest in Debtor, and River Bend Partners holds a 99.5% interest. River Bend Partners is Debtor's managing general partner, but Leo Zickler is the managing general partner of River Bend Partners, with powers over Debtor's daily operation of the apartment complex which is Debtor's principal asset.

River Bend Partners has four general partners and four limited partners. It was formed for the purpose of funding the acquisition and development of the land for Debtor's apartment project. Penn Mutual Life Insurance Company ("Penn Mutual"), one of the limited partners, and Walnut G Corp. ("Walnut G"), one of the general partners, contributed most of the funds. Another partner contributed land. Penn Mutual and Walnut G together made capital contributions to River Bend Partners of more than $5.9 million, and under the River Bend Partners' partnership agreement, they have preferred distribution rights in River Bend Partners. Penn Mutual filed a Proof of Interest in this case on March 9, 1990 in the amount of $9,464,737.10; and Walnut G filed a Proof of Interest on the same day in the amount of $180,668.20. Debtor has to date not objected to these proofs of interest.

The appraised fair market value of Debtor's apartment project is more than its secured and unsecured debt, but the apparent equity is less than the preferred rights of Penn Mutual and Walnut G in distributions to River Bend Partners. Further, Debtor's cash flow has not been sufficient to service its secured debt and to satisfy its post-petition obligations in full. There is thus a demonstrable risk that the priority distribution rights of Penn Mutual and Walnut G in River Bend Partners will erode. Consequently, Penn Mutual and Walnut G have a substantial economic interest in Debtor's reorganization, and this economic interest will be directly affected by the extent to which a plan for Debtor is successful or unsuccessful.

Debtor is immobile. It filed this case a year ago, and it has been unable to propose a plan of reorganization. The partners of River Bend Partners are in disagreement and River Bend Partners has been unable to act. As a consequence, the partners of Debtor have been unable to act for Debtor.

To further their economic interests in Debtor, Penn Mutual and Walnut G have filed a plan of reorganization which provides for the sale, refinancing or foreclosure of Debtor's apartment project under alternative scenarios. Leo Zickler, the .5% general partner of Debtor, has filed his own plan which contemplates Debtor's continued operation of the apartment project; and he has objected to the statement and plan of Penn Mutual and Walnut G on the ground they are not parties in interest entitled to file a plan of reorganization under 11 U.S.C. § 1121(c).

*Conclusions*

After the exclusive period within which a debtor may file a plan has expired, 11 U.S.C. § 1121(c) provides, in pertinent part:

"(c) Any party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan...."

Penn Mutual and Walnut G are not within the specific categories identified as parties in interest in Section 1121(c). Leo Zickler argues that they are not parties in interest because they do not have a direct or legal relationship with Debtor. Only River Bend Partners, as a general partner and owner of Debtor, has such a relationship; and since Penn Mutual and Walnut G hold equity interests only in River Bend

Partners, they can propose a plan for Debtor only through River Bend Partners.

Penn Mutual and Walnut G counter that they in fact have an economic interest in Debtor's fate and will be impacted in a significant way by any plan. Since River Bend Partners is unable to speak, Penn Mutual and Walnut G contend that party in interest should be interpreted broadly to ensure fair representation of their economic interests by allowing them to file a plan. Neither party has been able to cite any direct authority on the issue raised.

Although Section 1121(c) lists specific categories of parties which are considered to be parties in interest, the list is open-ended. Section 1121(c) uses the term "including", which is explicitly not a limiting term in the Bankruptcy Code. 11 U.S.C. § 102(3). The legislative history of Section 1121 confirms that the listed categories of parties eligible to file a plan in Section 1121(c) was not intended to be exclusive. "The list is not exhaustive." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 406 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 118 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5904, 6362.

The phrase "party in interest" can be found in 46 separate sections of the Bankruptcy Code, but a precise definition is never given for a use of the term. This lack of precise definition was intentional. Congress' failure to define party in interest specifically was discussed by both Senator DeConcini and Representative Edwards during the proceedings preceding the enactment of the Bankruptcy Code of 1978. Senator DeConcini stated: "Rules of bankruptcy procedure or court decisions will determine who is a party in interest for the particular purposes of the provision in question." 124 Cong.Rec. S17407 (daily ed. Oct. 6, 1978); see id. at H11090 (daily ed. Sept. 28, 1979) (similar remarks of Rep. Edwards) as quoted in In re Penn–Dixie Industries, Inc., 9 B.R. 936, 939 (S.D.N.Y. 1981).

Participation and the right to be heard in a Chapter 11 case is governed by 11 U.S.C. § 1109(b), which contains language identical to that in 11 U.S.C. § 1121(c) in identifying parties in interest.

"(b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

Party in interest is an expandable concept depending on the particular factual context in which it is applied. The purpose is to permit the involvement of those persons and interests which will be affected by the reorganization process. See In re Amatex Corp., 755 F.2d 1034, 1041–44 (3rd Cir.1985). In Amatex Corp. the circuit court concluded that future asbestos claimants had a practical stake in the outcome of a reorganization case and were "... sufficiently affected by the reorganization proceedings require some voice in them." Id. at 1042. Therefore, they qualified as parties in interest entitled to be heard through the appointment of a legal representative, and the court reversed the district court's approval of the bankruptcy court's contrary recommendation. "[T]he concept of 'party in interest' is an elastic and broad one designed to give the Court great latitude to insure fair representation of all constituencies impacted in any significant way by a Chapter 11 case." In re Johns–Manville Corp., 36 B.R. 743, 754 (Bankr.S. D.N.Y.1984), aff'd, 52 B.R. 940 (S.D.N.Y. 1985). Accord, In re Public Service Co. of New Hampshire, 88 B.R. 546 (Bankr.D.N. H.1988), particularly discussion at 550–51 and 554–55.

Section 1109(b) perpetuates a concept under Chapter X of the Bankruptcy Act, which is found in Act Section 206 and former Bankruptcy Rule 10–210, that some parties, such as creditors, have the right to be heard on all matters arising in a reorganization proceeding, and other interested entities may have the right to be heard on particular matters. For example, Bankruptcy Rule 10–210(a)(2) under the Bankruptcy Act provided that "[a] labor union ... shall have the right to be heard on the economic soundness of a plan affecting the interests of the employees."

The purpose of Chapter 11 of the Bankruptcy Code is to give the financially distressed debtor a breathing spell in which to accomplish rehabilitation. *In re CLDC Management,* 58 B.R. 181, 182 (Bankr.N.D. Ill.1985), citing *Matter of Winshall Settlor's Trust,* 758 F.2d 1136, 1137 (6th Cir. 1985). A Chapter 11 plan facilitates the above purpose by providing the framework for rehabilitation, or distribution if the plan contemplates liquidation. Time frames within Chapter 11 insure that creditors will not endure an unreasonable delay upon a debtor's filing for relief under the Bankruptcy Code. *See Century Glove, Inc. v. First American Bank of New York,* 860 F.2d 94, 102 (3rd Cir.1988). Section 1121 is designed to afford a debtor an exclusive period in which to propose a plan. After the exclusive period has run, the Code provides that parties in interest may file plans. This provision furthers the purpose of a rehabilitation, while recognizing that Chapter 11 is not a mechanism through which a debtor may operate indefinitely without attempting to reorganize. *See In re Witt,* 60 B.R. 556, 561 (Bankr.N.D.Iowa 1986).

■ In determining party in interest status, the court must determine on a case by case basis whether the party has a sufficient stake in the outcome so as to require representation. *In re Amatex Corp.,* 755 F.2d at 1042; *In re Ionosphere Clubs, Inc.,* 101 B.R. 844, 849 (Bankr.S.D.N.Y.1989). In applying this test the court must also recognize the goal of efficient reorganization by not granting every party, who so requests, party in interest status. *See In re Public Service Co. of New Hampshire,* 88 B.R. at 554. Therefore, a determination whether an entity qualifies as a party in interest should be made within the specific reorganization process context for which the determination is sought. The court should avoid deciding at the outset of a case that an entity is a party in interest generally. *See In re Public Service Co. of New Hampshire,* 88 B.R. 546 where the court deferred "... deciding these matters [whether certain governmental and interest groups would be designated parties in interest and permitted to intervene] until they can be presented in more specific con-

texts—with the three exceptions indicated...." *Id.* at 555. These considerations under Section 1109(b) are equally applicable under Section 1121(c). Penn Mutual and Walnut G's right to participate in Debtor's Chapter 11 case by sponsoring a plan must be analyzed in light of the purpose for filing a plan, as well as the general purposes embodied in the Bankruptcy Code. *See In re Ionosphere Clubs, Inc.,* 101 B.R. at 849.

In *Ionosphere,* a consumer organization was not afforded party in interest status to move that the debtor airline adopt a certain refund procedure since the court could not find that the organization was affected by the reorganization. *Ionosphere,* 101 B.R. at 850. The consumer organization sought to represent prepetition ticketholders of the debtor. In discussing intervention, the court noted that the rights of the parties sought to be represented were already adequately represented by the Examiner and the Unsecured Creditors Committee. *Id.,* at 855.

■ Penn Mutual and Walnut G, under the facts of this case, are parties in interest for the purpose of sponsoring a plan pursuant to § 1121(c). Debtor did not file a plan during the exclusive period, and it does not expect to in the future since its hands are tied by the internal disagreements of its two general partners. Of Debtor's two general partners, the managing partner, River Bend Partners, could not file a plan as its own general partners were in disagreement as to the future course for Debtor. The other general partner of Debtor, who is also the managing general partner of River Bend Partners, filed his own plan after the subject plan was filed. Since River Bend Partners is unable to file a plan, no one is sponsoring the substantial economic interests of Penn Mutual and Walnut G. River Bend Partners have preferred distribution rights in Debtor, while Penn Mutual and Walnut G have preferred distribution rights in River Bend Partners; thus, Penn Mutual and Walnut G stand to receive any surplus after the priority, secured, and unsecured creditors are paid.

By allowing Penn Mutual and Walnut G to sponsor a plan, the Court is recognizing that Debtor may not operate indefinitely under the protection of the Bankruptcy Code without a plan for its future. The court is also recognizing that, due to the distribution scheme of Debtor and River Bend Partners, as well as the lack of representation for their interests, Penn Mutual and Walnut G have a substantial stake in the outcome of Debtor's reorganization.

Mr. Zickler argues that the test to determine party in interest status is whether the party is a real party in interest "... who, under the applicable substantive law, has the legal right which is sought to be enforced or is the party entitled to bring suit." *In re Comcoach Corp.*, 698 F.2d 571, 573 (2nd Cir.1983). The court in *Comcoach* was addressing party in interest within the context of a motion for relief from stay under 11 U.S.C. § 362(d). The court held that a mortgagee who was not a creditor of the debtor, a tenant in possession, was not a party in interest which could qualify to seek a modification of the automatic stay for cause. The mortgagee sought the modification to add the debtor as a party defendant in a pending state foreclosure action. The debtor had no obligation on the mortgage, but merely owed a duty to pay rent to the mortgagor landlord. Further, the court concluded the mortgagee did not have a right to equitable relief against the debtor. *In re Comcoach Corp.*, 698 F.2d at 573–74.

The cases cited by the *Comcoach* court in announcing the test for a "real party in interest" all involve Federal Rule of Civil Procedure 17 which specifies who is a real party in interest for commencing an action. FRCP 17 is applicable in adversary proceedings in a bankruptcy case, but it is not explicitly applicable to contested matters. Bankruptcy Rules 7017, 9014. The real party in interest principle is a litigation concept used to identify the person who possesses the legal or equitable right which is sought to be enforced. As such, it differs from the concepts of capacity and standing, although standing may closely resemble real party in interest in many instances. *See* 6A Wright–Miller–Kane,

Federal Practice and Procedure, §§ 1542, 1543 (1990) and *id.* at Vol. 13, § 3531 (1984). A real party in interest determination thus serves an essentially different and more narrow purpose than the determination of a party in interest in a non adversary context of determining who may be sufficiently impacted by a reorganization proceeding to be entitled to some representation or voice in the process. Additionally, in *Comcoach* the court noted that the mortgagee was not left without a remedy upon denial of Section 362(d) party in interest status. The mortgagee could seek appointment of a state court receiver for the property who would have the necessary right to pursue a lift of the automatic stay. *Comcoach*, 698 F.2d at 574–75.

In the case at hand, Penn Mutual and Walnut G do not seek to commence an action or lift the stay, but rather they seek to sponsor a plan for submission to creditors and interest holders for approval. The *Comcoach* opinion did not address the meaning of the term party in interest in the context of Sections 1109(b) or 1121(c). That case had been converted to a Chapter 7 after the case was appealed to the Second Circuit. Rather, the court analyzed the purpose of the automatic stay as a protection against creditors and the general liquidation purpose of Chapter 7 in arriving at its determination. *Id.* at 573–74. In contrast, the issue at hand necessitates as a backdrop the purpose of Chapter 11 to arrive at a decision on a debtor's future in determining which parties constitute parties in interest for the purpose of filing a Chapter 11 plan.

As further support for his position that absent their entitlement to assert rights directly against Debtor, Penn Mutual and Walnut G are not parties in interest which may file a plan, Leo Zickler relies on two cases under the Bankruptcy Act, namely, *In re South State Street Bldg. Corp.*, 140 F.2d 363 (7th Cir.1943) and *In re Penn Central Transportation Company*, 328 F.Supp. 1273 (E.D.Pa.1971), *aff'd* 455 F.2d 976 (3rd Cir.1972). In the *South State Street Bldg. Corp.* case, a stockholder of a holding company with a subsidiary which

held an interest in a trust, which in turn owned debtor, sought to object to debtor's plan of reorganization in which the holding company, its subsidiary and the trust were participants. There were no allegations of fraud or gross mismanagement. Under Section 206 of the Bankruptcy Act, cited *supra,* the court found the stockholder was not party in interest specifically identified in that section and had no right to intervene. An important factual difference between the instant case and the *South State Street Bldg. Corp.* case is that here, because of partner disagreements, the substantial economic interests of Penn Mutual and Walnut G will not be represented unless they can assert them directly. In the *South State Street Bldg. Corp.* case the stockholder's indirect interest in the debtor's affairs was represented by entities with a direct interest in the debtor as owner or as a participant in debtor's plan.

In the *Penn Central Transportation Company* case a few stockholders of the wholly-owned debtor's parent company were denied the right to intervene generally in the reorganization proceeding under Section 77(c)(13) of the Bankruptcy Act. The court concluded it was obvious that the stockholders' individual holdings were insufficient to justify intervention, as contrasted to the right to be heard if they had been stockholders of the debtor. 328 F.Supp. at 1275 and fn. 1. The district court found intervention discretionary and found no inequity in refusing intervention because the stockholder interests were represented by the parent company.

"... there is no inequity in refusing these applications for intervention at this time. There is no reason to suppose that the parent company and its present management will fail to provide adequate representation of the shareholders' interests." 328 F.Supp. at 1276.

■ In the instant case, there would be inequity in refusing to recognize Penn Mutual and Walnut G as parties in interest entitled to file a plan. Further, the right to intervene generally is not involved because recognition is justified in a particular factual context for a particular purpose. *See In re Public Service Co. of New Hampshire,* 88 B.R. at 554–557. Finally, as discussed above, the concept of party in interest under the Bankruptcy Code for purposes of participation in the reorganization process should be interpreted flexibly to insure fair representation of all significantly impacted constituencies.

Mr. Zickler suggests that unless the court requires that a party be entitled to assert rights directly against a debtor in order to participate, the efficiency of the reorganization process will be threatened and the court's attention will be diverted to resolving disagreements among owners of entities with claims. Efficiency of the reorganization process is a consideration. *See In re Public Service Co. of New Hampshire,* 88 B.R. at 554. However, it is not a compelling factor in the instant situation because River Bend Partners, which has a direct interest in Debtor and is entitled to act for the interests of Penn Mutual and Walnut G, is unable to act. Therefore, no conflict with actions of River Bend Partners toward the Debtor arises.

For the aforesaid reasons, Penn Mutual and Walnut G are parties in interest eligible to sponsor a plan of reorganization for Debtor.