**In re E.S. BANKEST, L.C., Debtor.**

**No. 04–17602–BKC–AJC.**

United States Bankruptcy Court, S.D. Florida.

Feb. 15, 2005.

Paul J. Battista, Genovese Joblove & Battista, P.A., Miami, FL, for Lewis B. Freeman.

Paul Steven Singerman, Berger Singerman, Miami, FL, for Banco Espirito Santo International, Ltd.

Scott L. Baena, Bilzin Sumberg Baena, et al., Miami, FL, for Gunster Yoakley & Stewart, P.A.

*MEMORANDUM OPINION GRANTING THE MOTIONS BY LEWIS B. FREEMAN, CUSTODIAN EXCUSED FROM TURNOVER, AND BANCO ESPIRITO SANTO INTERNATIONAL, LTD., TO STRIKE THE MOTION BY GUNSTER, YOAKLEY & STEWART, P.A. FOR ORDER (I) CONVERTING CHAPTER 11 CASE TO CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE, OR (II) APPOINTING CHAPTER 11 TRUSTEE, OR (III) APPOINTING AN EXAMINER, PURSUANT TO 11 U.S.C. §§ 105, 1104 AND 1112(b) AND BANKRUPTCY RULE 9014*

A. JAY CRISTOL, Chief Judge.

**THE MATTER** came before the Court for hearing on January 13, 2005 at 11:00 a.m. in Miami, Florida upon the motions by Lewis B. Freeman, custodian excused from turnover with the rights, powers, duties and obligations of a debtor in possession ("Freeman") (C.P. No. 74), and Banco Espirito Santo International, Ltd. ("BESIL") (C.P. No. 71) (Freeman and BESIL shall be collectively referred to herein as the "Movants") to strike (collectively, the "Motions to Strike") the *Motion by Gunster, Yoakley & Stewart, P.A. for Order (I) Converting Chapter 11 Case to Case Under Chapter 7 of the Bankruptcy Code; or (II) Appointing Chapter 11 Trustee; or (III) Appointing an Examiner, Pursuant to 11 U.S.C. §§ 105, 1104 and 1112(b) and Bankruptcy Rule 9014* (the "Motion to Convert") (C.P. No. 32) filed by Gunster, Yoakley & Stewart, P.A. ("Gunster"). Based upon the pleadings and arguments and for the reasons set forth herein, the Court grants the Motions to Strike, in part, finding that Gunster lacks party-in-interest standing to prosecute the Motion to Convert. The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R.Bankr.P. 7052.

### Findings of Fact

1. On August 9, 2004, E.S. Bankest, L.C. ("Bankest" or the "Debtor") filed its voluntary petition for relief under chapter 11, title 11, United States Code (the "Bankruptcy Code"). (C.P. No. 1) Schedule "F" to the Debtor's chapter 11 petition listed Gunster as a holder of a disputed claim in the amount of $621,970.

2. Also on August 9, 2004, the Debtor filed its *Combined Chapter 11 Plan of Liquidation* (C.P. No. 3) and *Disclosure Statement in Connection with Combined Chapter 11 Plan of Liquidation.* (C.P. No. 4)

3. After 18 months of investigation, on September 9, 2004, Freeman, as the representative of the Bankest estate, filed an adversary proceeding against Gunster and Mark J. Scheer (collectively, the "Defen-

dants") seeking in excess of $170 million in damages for alleged legal malpractice and breaches of fiduciary duty by Gunster in connection with its prior representation of Bankest, Adv. No. 04–1444–BKC–AJC–A (the "Adversary Proceeding"). The Adversary Proceeding remains pending before the Court.

4. On November 12, 2004, Gunster filed its Motion to Convert. (C.P. No. 32) Through its Motion to Convert, Gunster seeks entry of an order converting the Debtor's chapter 11 case to a case under chapter 7 or, alternatively, appointing a chapter 11 trustee or, alternatively, appointing an examiner.

5. In footnote 1 of the Motion to Convert, Gunster states as follows:

Gunster is a defendant in an adversary proceeding commenced by the Debtor. As such, Gunster neither consents to, nor invokes, the equitable jurisdiction of this Court. Gunster seeks to preserve its rights and defenses in the adversary proceeding, and prevent the collateral estoppel and/or res judicata effect of any order entered in these bankruptcy cases from depriving Gunster of its rights and defenses in the adversary proceeding without an opportunity to be heard.

Motion to Convert, at 1 n. 1.

6. Thus, the basis upon which Gunster asserts party-in-interest standing to prosecute the Motion to Convert is its status as a defendant in the Adversary Proceeding, and more specifically its goal of preserving its rights and defenses therein.

7. On December 1, 2004, the District Court conducted a hearing on the Abstention Motion at which Gunster's counsel made the following statements:

Mr. Baena: "...the issue that emerges from this litigation is so far removed from bankruptcy that it literally has nothing to do with bankruptcy except for the fact that this lawsuit was filed by a debtor in the bankruptcy"

Transcript of Dec. 1 Hearing, at 72, lines 20–23.

Mr. Pasano: "Here, I suggest we couldn't be farther away from something related to the bankruptcy. We are talking about a malpractice claim where the only effect on the bankrupted state [sic] is whether there is money that will come in by virtue of the claim being made. Very different."

Transcript of Dec. 1 Hearing, at 16, lines 6–10.

Mr. Pasano: "...this case [the Adversary Proceeding] couldn't be farther away from what is going to be on in the collection of the effects and affairs of the bankruptcy estate...."

Transcript of Dec. 1 Hearing, at 18, lines 18–20.

8. On December 13, 2004, BESIL and Freeman filed the Motions to Strike. (C.P. No. 71; C.P. No. 74)

9. Also on December 13, 2004, BDO Seidman, LLP ("BDO") filed a joinder (the "Joinder") in the Motion to Convert. (C.P. No. 73) [1]

10. The claims bar date in this case was December 22, 2004.

11. Gunster consciously elected not to file a proof of claim in Bankest's chapter 11 case. This decision was entirely consistent with a prior pleading filed by Gunster with the District Court on December 9, 2004 in connection with the Abstention

---

1. By agreement of Freeman, BESIL and BDO, the Motions to Strike, to the extent they were directed at BDO's Joinder, will be heard at a later date. At such a hearing the Court will also consider the supplement to the Motion to Strike filed by BESIL which is directed solely at BDO. (C.P. No. 115)

Motion in which Gunster stated that it had "not filed a proof of claim in the [Bankest] bankruptcy case and [would] not do so." *Defendants' Supplemental Pleading in Support of Defendants' Motion to Withdraw the Reference Herein* (the "Supplemental Pleading"), at 5.

12. On January 6, 2005, Bankest filed its *First Amended Chapter 11 Plan of Liquidation* (the "Amended Plan") (C.P. No. 107), and its *First Amended Disclosure Statement in Connection With First Amended Chapter 11 Plan of Liquidation.* (C.P. No. 108) The Amended Plan provides for payment in full to allowed undisputed unsecured claims.

13. In opposition to the Motions to Strike, Gunster argued at the January 13, 2005 hearing that it was still a creditor with standing under 11 U.S.C. § 1109(b) to prosecute the Motion to Convert. As set forth in its Motion to Convert, Gunster's concerns are: (1) a misuse of the bankruptcy process, and (2) the relief sought is in the best interests of legitimate creditors. This Court finds Gunster's concerns to be disingenuous.

14. Gunster's motivation in prosecuting the Motion to Convert appears to be a litigation tactic. The relief sought in the Motion to Convert does not seek to maximize recovery by the estate; rather, Gunster's motivation is to reduce or eliminate its exposure in the case or, at a minimum, to delay or disrupt the Adversary Proceeding. Furthermore, Gunster does not have a pecuniary or legitimate interest in these proceedings, nor does Gunster have a legally protected interest affected by these proceedings.

15. Having reviewed the Motions to Strike, the authorities cited therein, the cases provided to the Court and Movants by Gunster, the Court file, and otherwise being duly advised in the premises, the Court will grant the Motions to Strike, but

only in part, as they relate to Gunster. The Court will not strike the Motion to Convert *en toto* as certain creditors and interested parties have filed joinders in the Motion to Convert and are relying on same to pursue the relief requested therein.

## *Conclusions of Law*

### A. *Legal Standards*

16. Section 1109 of the Bankruptcy Code defines who has a right to be heard in a chapter 11 case and subsection (b) thereof identifies a "party in interest." Specifically, section 1109(b) provides as follows:

> (b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1109(b).

17. The term "party in interest" "is defined non-exclusively to include 'the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indentured trustee.'" *Kaiser Aerospace & Electronics Corp. v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.),* 244 F.3d 1289, 1304 n. 11 (11th Cir.), *cert. denied,* 534 U.S. 827, 122 S.Ct. 66, 151 L.Ed.2d 33 (2001) (quoting 11 U.S.C. § 1109(b)). The term party-in-interest "'is generally understood to include all persons whose pecuniary interests are [sic] directly affected by the bankruptcy proceedings.'" *Nintendo Co., Ltd. v. Patten (In re Alpex Computer Corp.),* 71 F.3d 353, 356 (10th Cir.1995) (quoting *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson),* 5 F.3d 750, 756 (4th Cir.1993)); *Kapp v. Naturelle, Inc. (In re Ellis),* 611 F.2d 703, 706 (8th Cir.1979) (noting that courts con-

struing the term party-in-interest "have reasoned that the interest must be a pecuniary interest in the estate to be administered.").

■■■ 18. Because there is no precise definition of the phrase party-in-interest, courts are to make this determination on a case by case basis. *In re Amatex*, 755 F.2d 1034, 1042 (3d Cir.1985). "An entity may be [a] real party in interest and have standing in one respect while he may lack standing in another respect." *In re Ofty Corp.*, 44 B.R. 479, 481 (Bankr.D.Del.1984); *see also In re Rimsat, Ltd.*, 193 B.R. 499, 503 (Bankr.N.D.Ind.1996) ("...the right to appear and be heard is not the same as standing and § 1109(b) does not necessarily mean that every party in interest can seek relief on every issue."). "The determination [of] whether an entity qualifies as a party in interest should be made within the specific reorganization process context for which the determination is sought." *In re River Bend–Oxford Assocs.*, 114 B.R. 111, 113 (Bankr.D.Md.1990). In that regard, it is appropriate for a court to examine the motivation of the party asserting party-in-interest standing. *Peachtree Lane Assocs., Ltd v. Granader (In re Peachtree Lane Assocs., Ltd.)*, 188 B.R. 815, 827 (N.D.Ill.1995). The Bankruptcy Code is replete with examples where a creditor may not have standing to object. For example, creditors whose rights are unimpaired under a plan have no right to vote on the plan, 11 U.S.C. § 1126(f), and lack standing to object to a chapter 11 confirmation process. *In re Orlando Invs., L.P.*, 103 B.R. 593, 596 (Bankr. E.D.Pa.1989). Moreover, creditors lack standing to challenge those portions of a reorganization plan that do not affect their direct interests. *Id.* at 596–97.

■■ 19. The concept of party-in-interest standing historically developed as a flexible one to insure that all interests significantly impacted by a chapter 11 case have an adequate opportunity for fair representation. *In re Torrez*, 132 B.R. 924, 934 (E.D.Cal.1991). "The reorganization of a corporation in bankruptcy is a matter between the corporation and its stockholders on the one hand, and its creditors on the other." *In re Rimsat*, 193 B.R. at 502. The test to determine whether a party has a protected interest under section 1109(b) is whether the party has a sufficient stake in the outcome of the chapter 11 proceedings so as to require representation. *In re Torrez*, 132 B.R. at 934. The general theory behind section 1109(b) is that anyone holding a direct financial interest in the outcome of a case should be able to participate to protect their interest.

20. Lastly, in determining party in interest standing, courts should be cautious because "[o]verly lenient standards may potentially over-burden the reorganization process by allowing numerous parties to interject themselves into the case on every issue, thereby thwarting the goal of a speedy and efficient reorganization." *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 850 (Bankr.S.D.N.Y.1989).

21. Several courts have concluded that only creditors with some interest in a distribution from the estate or those parties with equitable claims against the estate qualify as parties in interest under section 1109(b). *See, e.g., In re Comcoach Corp.*, 698 F.2d 571 (2d Cir.1983); *In re Ionosphere Clubs, Inc., supra.* Under the reasoning of these cases, Gunster is clearly not a party-in-interest in respect of the Motion to Convert as its failure to file a proof of claim in this case prohibits it from receiving a distribution from this chapter 11 estate. Fed.R.Bankr.P. 3003(c)(2).

■■ 22. Most cases dealing with noncreditors being parties in interest "have involved contexts that lie at the heart of

the reorganization process...." *Peachtree Lane Associates,* 188 B.R. at 827. When dealing with matters involving the reorganization process, the *Peachtree* court concluded that it was sensible to "inquire as to whether the proposed party in interest is a creditor or has some other pecuniary stake in the outcome of the reorganization." *Id.* As a result, if a person is seeking party in interest status in the context of a reorganization matter, then the courts should focus on whether such person is a creditor or has a pecuniary stake in the outcome of the reorganization, *i.e.,* determine the purpose for which standing is sought.

23. Likewise, in *In re JMP–Newcor International, Inc.,* 225 B.R. 462, 464 (Bankr.N.D.Ill.1998), the court stated that section 1109(b) " 'means ... that anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains....' " *Id.* (quoting *In re James Wilson Assocs.,* 965 F.2d 160, 169 (7th Cir. 1992)). However, "to qualify as a party in interest requires more than merely being interested in the outcome of the bankruptcy. It requires a direct legal interest in the case." *Rimsat,* 193 B.R. at 502.

24. Other courts find litigants to be parties in interest if they have a "sufficient" or "practical" stake in the proceedings, *see, e.g., In re Amatex Corp.,* 755 F.2d at 1041 (potential, future claimants— individuals exposed to asbestos but not yet manifesting symptoms—had a practical stake in the outcome of the debtor asbestos manufacturer's chapter 11 case to be deemed parties in interest warranting separate representation), or a "legally protectible interest" therein. *See, e.g., In re FBN Food Servs.,* 1995 WL 230958, *4 (N.D.Ill.1995) (defendant in adversary proceeding not a party-in-interest with standing to challenge the allowance of a credi-

tor's claim; because defendant's liability to the estate would not be altered by allowance of the claim the defendant had no legally protectible interest in the claims allowance/disallowance proceeding).

## B. *Application of Legal Standards*

(i) *Gunster possesses no pecuniary interest in Bankest's estate or how or by whom it is administered.*

25. The sole basis for Gunster's assertion of party-in-interest status in the Debtor's main case is a litigation tactic to delay and hinder prosecution of the Adversary Proceeding with the ultimate goal to reduce the estate's recovery in connection therewith. None of Gunster's rights, defenses, counterclaims or third-party claims are affected by any events in the main bankruptcy case or related to the relief sought by Gunster in the Motion to Convert. In fact, Gunster admits that it is not affected by the main bankruptcy case in its Supplemental Pleading wherein it states that "[t]he bankruptcy court can proceed to a reorganization plan without ever needing to involve itself in the issues raised in the [Adversary Proceeding]." Supplemental Pleading, at 5 n. 4. Similarly, Gunster can proceed in the Adversary Proceeding without ever getting involved in the reorganization process. These facts clearly evidence that Gunster has no direct legal interest in the outcome of the main bankruptcy case and that it lacks a "legally protected interest" that could be affected by the main bankruptcy proceedings.

26. Since Gunster did not file a proof of claim in the Bankest case, a strategic litigation decision apparently done in furtherance of Gunster's continued assertion that it has not submitted itself, and does not consent to submitting itself, to this Court's equitable jurisdiction, its claim is disallowed for purposes of voting on the Amended Plan or receiving a distribution

from the estate. Fed.R.Bankr.P. 3003(c)(2) ("... any creditor who fails [to file a proof of claim] shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution."). Gunster therefore has no pecuniary interest in the estate or the administration thereof. *See id.* Thus, the cases cited by Gunster, *e.g., In re Stamford Color Photo, Inc.,* 105 B.R. 204 (Bankr.D.Conn.1989), for the proposition that Gunster is a creditor, notwithstanding its failure to file a proof of claim, are of no assistance to it here because Gunster has no pecuniary interest in the Bankest estate or how, or by whom, it is administered.[2]

27. Another case cited by Gunster, *In re B. Cohen & Sons Caterers, Inc.,* 124 B.R. 642 (E.D.Pa.1991), is fatal to its position. In that case, the district court had before it for appellate review an order confirming the debtor's chapter 11 plan. The district court, accepting the proposition urged by Gunster, that the failure to file a proof of claim does not necessarily mean that an entity is no longer a creditor, nevertheless found that because the allegedly objectionable portions of the plan did not impact any direct interest of the objecting party it lacked standing to object to confirmation. *Id.* at 647. Applied here, even assuming *arguendo* that Gunster is a "creditor" notwithstanding its failure to file a proof of claim, the fact that the relief requested in the Motion to Convert will not implicate any direct interest Gunster has in the administration of the estate compels the conclusion that Gunster lacks party-in-interest standing to prosecute the Motion to Convert. *See also In re James Wilson Assocs.,* 965 F.2d 160, 169 (7th Cir.1992) (Seventh Circuit held that the debtor's primary secured creditor lacked party in interest standing to interject itself into the issue of whether the debtor had assumed a lease to which the secured creditor was not a party where the creditor had no (legally protectible) interest in the lease).

2. The case law cited by Gunster for this proposition is unpersuasive. *Stamford* is otherwise distinguishable because in that case the party afforded party-in-interest status, the debtor's principal's ex-wife, was the beneficiary of an order of the state court before which the movant's divorce proceeding with debtor's principal was pending which directed placement of the mortgages from and the proceeds of the sale of the debtor's primary asset to be held in escrow to satisfy the movant's claims in the dissolution proceeding. 105 B.R. at 205–06. Gunster has no such interest in any asset of Bankest's estate. Other cases cited by Gunster for the proposition that the failure of an entity to file a proof of claim does not mean that it is not a creditor are also factually distinguishable and, thus, inapposite here. For example, in *In re Marshall,* 298 B.R. 670, 673–75 (Bankr.C.D.Cal. 2003), the trustee of three family trusts was found to be a party-in-interest with standing to object to confirmation of the debtors' chapter 11 plan and seek dismissal of the individual cases notwithstanding that the trustee declined to file a proof of claim where the trustee, in a pre-petition action, had sought entry of an order requiring the debtors to transfer substantially all of their assets to satisfy a judgment in the probate case of their father. Similarly, in *In re Wells,* 227 B.R. 553, 558–60 (Bankr.M.D.Fla.1998), the trustee of a trust who, unlike Gunster, had filed proofs of claims, and who had obtained stay relief to continue prosecuting a state court claim for specific performance in connection with a purchase of certain real property but was precluded from executing on any judgment without further order of the bankruptcy court, was found to possess party-in-interest standing to seek dismissal of the debtor's chapter 11 case. In *Stamford, Marshall* and *Wells,* unlike here, the movants had direct interests in the outcome of the debtors' main chapter 11 cases that warranted affording them party-in-interest status to seek dismissal thereof. Gunster's lack of any direct interest, financial or otherwise, in the outcome of the Debtor's chapter 11 case precludes a finding that Gunster is a party-in-interest Motion to Convert.

28. Gunster does not have a pecuniary interest in the estate. Its interest in defending itself in the Adversary Proceeding (which it most certainly has the right to do), is antithetical to the interests of the legitimate creditors of the Debtor who have a direct interest in *maximizing* any recovery from Gunster. Simply stated, Gunster's interest in prosecuting the Motion to Convert appears to be defensive and strategic in nature, and is intended to derail or delay prosecution of the claims against it.

29. Similarly, in *Still v. Fundsnet, Inc. (In re Southwest Equip. Rental)*, 152 B.R. 207 (Bankr.E.D.Tenn.1992), the court held that defendants in an adversary proceeding brought by the trustee to recover preference payments lacked party-in-interest standing to seek dismissal of a main case on the grounds that the bankruptcy petition was not properly authorized. The court noted that the relief sought was to avoid liability, not to protect the rights of shareholders or other creditors: "The defendants want the bankruptcy case and this lawsuit dismissed to protect the payments they received. They are not trying to protect the rights of shareholders or other creditors. They don't care." *Id.* at 209–10. Like the defendants in *Still*, Gunster doesn't care about the economic interests of the legitimate creditors of this estate. As acknowledged in footnote 1 of the Motion to Convert, para. 5, *supra*, Gunster's interest is in preserving its rights and defenses in the Adversary Proceeding.

**(ii)** *Gunster does not possess a "sufficient" or "practical" stake in the outcome of Bankest's chapter 11 case or in the relief sought in the Motion to Convert.*

■ 30. Decisional law addressing the issue of whether a defendant in a pre-petition lawsuit or a post-petition adver-

sary proceeding (which is Gunster's status here) possesses a "sufficient" or "practical" stake in a debtor's bankruptcy case confirms that Gunster lacks party in interest standing to prosecute the Motion to Convert. *See, e.g., Alpex Computer Corp.*, 71 F.3d at 356–58 (holding that defendant in patent infringement suit brought by debtor lacked party-in-interest standing to seek to reopen debtor's previously confirmed chapter 11 case to enforce its interpretation of confirmed plan); *Irvin v. Lincoln Heritage Life Ins. Co. (In re Irvin)*, 950 F.2d 1318, 1321–22 (7th Cir.1991) (stating that it had "considerable doubt" as to whether defendant in pre-petition suit brought by debtor possessed party-in-interest standing to seek to reopen case where defendant was not a creditor of the debtor, but disposing of appeal on other grounds); *In re FBN Food Servs., Inc.*, 1995 WL 230958, *4, *supra*; *In re Sweeney*, 275 B.R. 730, 733 (Bankr.W.D.Pa. 2002) (state court defendants lacked standing to oppose chapter 7 trustee's motion to retain special counsel to prosecute suit; court stated that the fact that defendants were named parties in the state suit "does not thereby also make them parties-in-interest with respect to the instant bankruptcy case. Because said entities lack any other relation to the instant bankruptcy case, they thus are not parties-in-interest with respect to the same, which means that they lack standing to participate in matters that deal solely with the administration of such case...."); *In re JMP–Newcor Intern., Inc.*, 225 B.R. at 464–65 (creditor that had previously assigned claim against debtor, and which was a defendant in an adversary proceeding brought by debtor, lacked party-in-interest standing to challenge debtor's motion for final decree closing bankruptcy case).

31. *Peachtree Lane Assocs., supra*, held that a defendant in an adversary proceeding possessed party-in-interest stand-

ing to challenge venue of the underlying bankruptcy case where, in order to have venue of the adversary proceeding transferred, the defendant would have to overcome the presumption that the district in which the underlying bankruptcy case was pending was the appropriate district for venue of the adversary proceeding. This case illustrates the type of nexus that is required before a defendant in an adversary proceeding, like Gunster here, will be entitled to a finding that it is a party-in-interest for a particular proceeding in a debtor's main case. The court described the relationship between the debtor's main case and the adversary proceeding as "inextricably intertwined." 188 B.R. at 826. There is no such connection here as conceded by statements by Gunster, para. 7, *supra.*

32. At the hearing on the Motions to Strike, however, Gunster argued that the statements of counsel to Gunster, para. 7, *supra,* were taken out of context as having been made in connection with the Abstention Motion. Tr. at 26–27. But Gunster asserted that the statements were "absolutely ... thoughtful and consistent with everything else we are doing in this case." Tr. at 27. The Court is not persuaded by Gunster's assertion that the referenced statements were taken out of context. Gunster's statements are clear and unequivocal. If the Adversary Proceeding and the main case have no connection for one purpose, they have no connection for all purposes. Based on its review of the record, the Court finds no connection between the state law claims of legal malpractice and breaches of fiduciary duty being asserted against Gunster and the manner in which, or by whom, Bankest's bankruptcy estate is or will be administered. Accordingly, Gunster lacks party-in-interest standing to prosecute the Motion to Convert.

(iii) *Gunster does not possess a "legally protectible interest" in Bankest's chapter 11 case or in the relief sought in the Motion to Convert.*

33. The above-cited cases and analyses also demonstrate that Gunster lacks a "legally protectible interest" in Bankest's main case or, more specifically, in the relief sought in the Motion to Convert. The narrow interest Gunster identifies in its Motion to Convert, preservation of its rights and defenses in the Adversary Proceeding, is simply not implicated by the relief sought in the Motion to Convert. Gunster will be able to assert any and all defenses it deems appropriate whether the Adversary Proceeding continues to be prosecuted by Freeman, on behalf of the Debtor's chapter 11 estate, or by a trustee in a chapter 11 case or a trustee in a converted chapter 7 case (who, as noted by the Court, Tr. at 34, might be Freeman). Because Gunster elected not to file a proof of claim, it has no pecuniary interest in this case that might otherwise entitle it to party-in-interest standing. *See In re FBN Food Servs., supra.*

34. It appears that Gunster, which lacks any direct interest in the relief sought in the Motion to Convert, is seeking to protect what it deems to be the interests or rights of others. In the Motion to Convert, Gunster asserts, *inter alia,* that this case, proceeding in a chapter 11 posture, is a misuse of the bankruptcy process and that it is in the best interests of the estate and "legitimate creditors" that the Court grant the Motion to Convert. Gunster, however, is not in a position to assert other parties' interests or rights, even if such third parties otherwise agree with the relief sought in the Motion to Convert. *See In re Rimsat, Ltd.,* 193 B.R. at 502, 503 (party in interest requires direct legal interest; court found that pre-petition re-

ceiver lacked party in interest standing to seek to convert or dismiss a chapter 11 case and, in so finding, the court rejected the receiver's assertion that he was trying to protect the rights of others). In short, Gunster possesses no "legally protectible interest" in the relief sought in the Motion to Convert.

### C. *Conclusion*

35. At the conclusion of the hearing, the Court directed the Office of the U.S. Trustee (the "UST") to submit a report within fifteen (15) days from the date of the hearing addressing the issue of whether the Debtor's chapter 11 case should be converted to a case under chapter 7 of the Bankruptcy Code. The UST has filed this report with the Court, and all interested parties, including counsel for Freeman, BESIL and Gunster, have had the opportunity to review the report. Based upon a review of the UST's report and the re-sponses thereto, and notwithstanding the findings and rulings contained herein, the Court believes that it is in the best interest of all creditors and interested parties to allow all parties, other than Gunster, who have joined in the Motion to Convert to proceed to prosecute the motion. It is therefore

**ORDERED AND ADJUDGED** that the Motions to Strike are GRANTED, in part, as they relate to Gunster; however, to the extent that certain creditors and interested parties have joined in the Motion to Convert, those creditors and interested parties may proceed to prosecute the Motion to Convert.