## In re SURFSIDE RESORT AND SUITES, INC., Debtor.

### Westchester Surplus Lines Insurance Company, Plaintiff,

v.

### Surfside Resort and Suites, Inc. and Bray & Gillespie IX, LLC, Defendants.

Bankruptcy No. 04–bk–09469–JAF.
Adversary No. 05–ap–00310–JAF.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

June 8, 2006.

Gary M. Freedman, Joel L. Tabas, Tabas, Freedman, Soloff & Miller, P.A., Miami, FL, for Plaintiff.

Walter J. Snell, Snell & Snell, P.A., Daytona Beach, FL, John B. Macdonald, Patrick P. Patangan, Akerman Senterfitt, Jacksonville, FL, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT

JERRY A. FUNK, Bankruptcy Judge.

This Proceeding came before the Court upon Defendants' Motion to Dismiss Complaint ("Motion"), Plaintiff's Response and Cross–Motion for Partial Summary Judgment ("Response"), Defendants' Reply ("Reply"), and Plaintiff's Supplemental Memorandum ("Memorandum"). Based upon the evidence presented and the arguments of the parties, the Court finds it appropriate to grant Defendants' Motion to Dismiss and deny Plaintiff's Cross–Motion for Partial Summary Judgment.

Plaintiff issued a policy of commercial insurance to, among other commercial properties, Surfside Resort and Suites, Inc. ("Debtor"), as part of the Hotel Risk Management Association Layered Property Program Property Coverage. (Defs.' Mot. to Dismiss at ¶ 2; Pl.'s Resp. at 3; Aff. of Wes Sattenfield at ¶ 4; Aff. of Walter Benzija, Ex. A.) The Policy covered the period from February 1, 2004, through February 1, 2005, and was designated as Policy Number D3589844A001 (the "Policy"). (Id.; see also Supplemental Aff. of Wes Sattenfield at ¶ 3.) This was a supplemental policy to the primary policy issued by Hartford Fire Insurance Company ("Hartford"), which offered $10,000,000.00 in primary coverage. (Defs.' Mot. to Dismiss at ¶ 2; Aff. of Wes Sattenfield at ¶ 4; Aff. of Walter Benzija, Ex. A.) The Policy, therefore, covered Debtor's property, an ocean front hotel resort in Ormond Beach, Florida (the "Hotel"), for physical loss or damage in excess of the $10,000,000.00 in coverage provided by Hartford. (Defs.' Mot. to Dismiss at ¶ 3; Aff. of Wes Sattenfield at ¶ 5; Aff. of Walter Benzija, Ex. A.) Debtor paid the premium in full to Plaintiff via an insurance premium finance agreement between Debtor and Imperial Premium Finance, Inc. ("Imperial"). (Defs.' Mot. to Dismiss at ¶ 4; Aff. of Wes Sattenfield at ¶ 6.) Hence, Imperial paid Plaintiff for the premiums due under the Policy owed by Debtor, for the full one-year term of the Policy. Id. This left Debtor obligated to Imperial, which it paid through installments. Id. Sometime during the months of August and September in 2004, the Hotel sustained property damage as a result of Hurricanes Charley and

Frances. (Defs.' Mot. to Dismiss at ¶ 8; Pl.'s Resp. at 3; Aff. of Wes Sattenfield at ¶ 10.)

Debtor filed for bankruptcy on September 17, 2004.[1] (Defs.' Mot. to Dismiss at ¶ 8; Pl.'s Resp. at 4.) On May 10, 2005, Debtor's First Amended Plan of Reorganization (the "Plan") was approved by the Court. (Defs.' Mot. to Dismiss at ¶ 11; Aff. of Wes Sattenfield at ¶ 13.) Defendant Bray & Gillespie IX, LLC ("B & G") owned and held the first and second mortgage liens encumbering the Hotel. (Defs.' Mot. to Dismiss at ¶ 5; Pl.'s Resp. at 3; Aff. of Joseph G. Gillespie at ¶ 2.) According to the Plan, B & G, Debtor's largest secured creditor, would purchase Debtor's main asset, the Hotel. (Defs.' Mot. to Dismiss at ¶ 11; Aff. of Wes Sattenfield at ¶ 13; Aff. of Walter Benzija, Exs. B, C, and D; Aff. of Joseph G. Gillespie at ¶ 3.) B & G acquired the right to collect the proceeds from the insurance claims asserted by Debtor pursuant to the sale. (Defs.' Mot. to Dismiss at ¶ 12; Aff. of Joseph G. Gillespie, Ex. A.)

On November 3, 2005, just a few days shy of the 180 days allocated by 11 U.S.C. § 1144 [2], Plaintiff filed a two-count complaint seeking to revoke the order confirming the Chapter 11 Plan ("Confirmation Order"). (*See generally* Pl.'s Compl.) Plaintiff alleges in Count I that the Confirmation Order should be revoked because Defendants conspired to intentionally deprive Plaintiff of notice of commencement of Debtor's bankruptcy case (the "Case"), thereby procuring the Confirmation Order by fraud. (Pl.'s Compl. at ¶¶ 17–20.) In the alternative, Plaintiff alleges in Count II that because of Defendants' fraudulent conduct, Plaintiff is entitled to declaratory relief that Plaintiff is not bound by the terms of the Plan. (Pl.'s Compl. at ¶¶ 21–25.)

Defendants filed the Motion contending that Plaintiff was never entitled to notice of Debtor's Case, and, as a result, failed to state a claim upon which relief could be granted. (Defs.' Mot. to Dismiss at 6–9.) Plaintiff contends in its Response that it was entitled to notice of commencement of the Case due to its status as a creditor, or, in the alternative, as a party in interest, and as such has legitimately stated a claim upon which relief could be granted. (Pl.'s Resp. at 7–8, 10–13, 15–19.) Furthermore, Plaintiff submits that summary judgment is inappropriate in this matter because there are numerous issues of material fact that remain in dispute. (Pl.'s Resp. at 13–19.) In addition, Plaintiff argues that it is entitled to partial summary judgment on the basis that B & G is bound by all provisions of the Policy, including the specified anti-assignment clause. (Pl.'s Resp. at 27–29.) Ergo, Plaintiff submits that Plaintiff is not bound by the Plan. *Id.*

Defendants counter in their Reply that the Policy expired by its own terms prior to confirmation of Debtor's Plan, among other factual assertions, and that Plaintiff never submitted proof that it did not receive notice of commencement of Debtor's Case. (Defs.' Reply at 2–4, 6–7.) Moreover, Defendants aver that Plaintiff is not entitled to partial summary judgment be-

---

**1.** This was Debtor's second bankruptcy case filed in 2004. Debtor originally filed for relief under Chapter 11 on the eve of the foreclosure sale that was scheduled pursuant to B & G's Summary Final Judgment of Foreclosure, which was obtained on May 18, 2004, after a state court action for Debtor's default on its payments to B & G.

**2.** Section 1144 of the Code states:
> On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud.

11 U.S.C. § 1144 (2005).

184

cause the expiration of the Policy prohibited the creation of new contractual rights between Plaintiff and B & G. (Defs.' Reply at 9.) Plaintiff raises "New Material Factual Dispute[s]" in its Memorandum regarding Defendants' assertion that Plaintiff did receive notice of commencement of Debtor's case via a dated letter, as Plaintiff reiterates that it never received any notice of commencement of Debtor's case. (*See generally* Pl.'s Mem.)

A court ruling based upon Federal Rules of Civil Procedure, Rule 12(b)(6) (made applicable to adversary proceedings by Bankruptcy Rule 7012), should not be taken lightly, as granting a motion to dismiss for failure to state a claim effectively terminates a plaintiff's case on its merits. *See Chatham Condo. Ass'ns v. Century Village, Inc.,* 597 F.2d 1002, 1011–12 (5th Cir.1979)(quoting *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)). In making its determination on dismissal under 12(b)(6), a court can only consider facts alleged in the pleadings, as to consult extrinsic evidence would convert the motion to one for summary judgment. *Concordia v. Bendekovic,* 693 F.2d 1073, 1075 (11th Cir.1982). While it is within a court's discretion to consider such extrinsic evidence and convert the motion to one for summary judgment, *Prop. Mgmt. & Inv., Inc. v. Lewis,* 752 F.2d 599, 604 (11th Cir.1985), the Eleventh Circuit follows a strict approach in applying the notice requirements of Rule 56, which requires 10 days' notice before the court may consider the motion as one for summary judgment. *Jones v. Auto. Ins. Co.,* 917 F.2d 1528, 1532–33 (11th Cir. 1990). Considering that the Motion was filed on December 12, 2005, and inasmuch as Plaintiff filed its Response on January 9, 2006 and its Memorandum on March 21, 2006, each addressing the propriety of summary judgment, the Court feels it has abided by the precise requirements of Rule 56. Thus, the Court will consider evidence outside the scope of the pleadings, and treat Defendants' Motion as one for summary judgment.

Summary judgment under Rule 56 is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (2005)(incorporated by Fed. R. Bankr.P. 7056). A moving party bears the initial burden of showing a court that there are no genuine issues of material fact that should be decided at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *accord Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 607 (11th Cir.1991). A moving party discharges its burden on a motion for summary judgment by " 'showing'—that is, pointing out ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548. In determining whether the movant has met this initial burden, "the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997)(citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993)). In other words, the court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If a moving party satisfies this burden, then a nonmoving party must come forward with specific facts showing that there

is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. *See id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* Therefore, the burden is on Defendants to show there is no genuine dispute over whether Plaintiff was entitled to notice of Debtor's Case, or, if notice was required, that the deprivation of notice was not fraudulent. Defendants also bear the burden of proving that the evidence supporting Debtor's assignment of the Policy without Plaintiff's express consent is so one-sided that Defendants must prevail as a matter of law. The burden is on Plaintiff to show there is no genuine dispute over whether B & G is bound by all terms of the Policy, specifically, the anti-assignment clause, thereby implying that Plaintiff is not bound by the Policy or the Confirmation Order.

Despite the voluminous factual assertions propounded by the parties with respect to the issue of notice, there does not appear to be a genuine issue of material fact to be decided by the Court. With respect to the issue of assignment of the Policy, Defendants met their burden and proved no genuine issue of material fact, and Plaintiff failed to establish that there is a genuine issue for trial. Furthermore, Plaintiff did not meet its burden of showing that there is no genuine dispute over whether B & G is bound by all terms of the Policy. Given the expansiveness of the claims, the Court will address each allegation in turn.

**A. *The Policy is not an executory contract.***

 Plaintiff postulates that the Policy is an executory contract, which being the non-bankrupt party to an executory contract, Plaintiff claims it was entitled to notice of Debtor's case. (Pl.'s Compl. at ¶¶ 11, 23.) Plaintiff asserts in its Complaint that Debtor assumed and assigned the Policy in violation of the Policy's anti-assignment clause. (Pl.'s Compl. at ¶¶ 11, 13.) As a result of this assignment, Plaintiff claims its ability to protect its rights and interests under the Policy were affected, namely, that it could not limit its potential responsibility for the damage claim proposed by B & G for the Hotel. (Pl.'s Compl. at ¶¶ 12, 18–20.) Essentially, Plaintiff attests that as the non-bankrupt party to an executory contract that was assigned in violation of the anti-assignment clause, Plaintiff is the holder of a "claim" within the meaning of § 101(5) of the Code, or that it is a "party in interest" as defined by § 1109 of the Code. (Pl.'s Compl. at ¶ 23.)

 In determining whether a contract is executory, this jurisdiction has followed the Countryman approach, which states that an executory contract is a "contract under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *Gencor Indus. v. CMI Terex Corp. (In re Gencor Indus.)*, 298 B.R. 902, 909 (Bankr.M.D.Fla.2003)(quoting Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L.Rev. 439, 460 (1973)(hereinafter "Countryman")); *In re Wells*, 227 B.R. 553, 564 (Bankr.M.D.Fla.1998)(citing *In re Maralak, Ltd.*, 104 B.R. 446, 450 (Bankr.M.D.Fla.1989)(citing Countryman)); *see also DSR, Inc. v. Manuel (In re Hamilton Roe Int'l)*, 162 B.R. 590, 593

(Bankr.M.D.Fla.1993)(citing generally Countryman). The Eleventh Circuit follows a more expansive view of executory contracts, which determines whether a contract is executory based upon the "benefits that assumption or rejection would produce for the estate." *Sipes v. Atlantic Gulf Communities Corp. (In re General Dev. Corp.)*, 84 F.3d 1364, 1375 (11th Cir. 1996) (citations omitted). This view has been designated the "functional approach." *Id.*

In the context of whether an insurance policy is an executory contract, the Middle District of Florida, Orlando Division, analyzed the issue as addressed by three other courts that have rendered an opinion on the matter. *In re Transit Group*, No. 01–12820–6J1, 2002 WL 31940797, at *4, 2002 Bankr.LEXIS 1389, at *11–12 (Bankr. M.D.Fla. November 25, 2002). In *Transit Group*, the court stated that, with the exception of one court applying state law, all of the courts have held that while insurance contracts are generally considered executory contracts, "the only basis for holding that an insurance policy is executory is if the insured had a continuing obligation to make premium payments under the policy." *Id.* (citing *In re Firearms Import and Export Corp.*, 131 B.R. 1009 (Bankr.S.D.Fla.1991)(which offers an in-depth review of congruous case law and synthesizes the assertion that insurance policies are not executory if the premiums have been paid prior to the petition date), *In re Sudbury, Inc.*, 153 B.R. 776 (Bankr. N.D.Ohio 1993), and *In re Texscan Corp.*, 976 F.2d 1269 (9th Cir.1992)(reaching a different holding via the application of state law)). The court reached this decision by applying both the Countryman and the Eleventh Circuit functional approach. *Id.* at *4, 2002 Bankr.LEXIS 1389, at *11–13. Thus, the court held that "the obligation to make premium payments under an insurance policy that ha[s] not expired

on the petition date renders the policy executory under § 365." *Id.* at *5, 2002 Bankr.LEXIS 1389, at *13.

Plaintiff asserts in its Response that *Transit Group* can be read to buttress Plaintiff's argument that the Policy was executory. (Pl.'s Resp. at 20 n. 6.) The Court disagrees. The facts before the court in *Transit Group* differed immensely from those currently before the Court. Hence, an application of the foregoing law to the facts in *Transit Group* yielded a conclusion that the insurance policies were executory because the debtor still owed an obligation to the insurance company to pay its premiums. Such is not the case here. Debtor had fully paid for one year's worth of premiums to Plaintiff in exchange for one year's worth of coverage under the Policy. (Defs.' Mot. to Dismiss at ¶ 4; Aff. of Wes Sattenfield at ¶ 6.)

In addition, the Court is heedful that "[t]he Eleventh Circuit Court of Appeals has not decided when an insurance policy is or is not an executory contract", *Transit Group*, 2002 WL 31940797, at *3, 2002 Bankr.LEXIS 1389, at *8–9, as noted by Plaintiff. Yet the Court is not stymied by the lack of precedent on the issue, as the Court is fully persuaded by *Transit Group's* rationale, as well as the thorough analysis undertaken by the Southern District of Florida in *In re Firearms Import and Export Corp.*, 131 B.R. 1009 (Bankr. S.D.Fla.1991). As a result, in applying the holding of *Transit Group*, Debtor had no obligation to make premium payments as of the petition date. Accordingly, the Policy cannot be considered an executory contract.

Notwithstanding the current trend toward classifying insurance policies as executory contracts based upon the obligation of the debtor to make premium payments as held by *Transit Group*, the Court is

fully satisfied that the Policy fails to satisfy either the Countryman definition or the functional view of executory contracts. The premium for the Policy had been paid to Plaintiff in full prior to the petition date. (Defs.' Mot. to Dismiss at ¶ 4; Aff. of Wes Sattenfield at ¶ 6.) According to the Countryman definition, Debtor's obligation to Plaintiff had been satisfied. As such, the Policy fails to satisfy the Countryman definition of an executory contract. Under the functional approach, there was nothing for Debtor to assume or reject. Performance had already been completed by Debtor, as aforementioned. Therefore, the benefit of assuming or rejecting the Policy is inapposite. Thus, the application of law renders the Policy non-executory and therefore not subject to being assumed and assigned under § 365.[3]

### B. *Defendants did not deprive Plaintiff of notice of Debtor's Case.*

Resolution of the main issue, however, does not hinge upon whether or not the Policy was an executory contract. The Court must now answer whether Plaintiff was entitled to notice of commencement of Debtor's case, despite the conclusion that the Policy was not an executory contract. Plaintiff claims that Defendants conspired to intentionally exclude Plaintiff from Debtor's Case so as to thwart Plaintiff's ability to object to confirmation of Debtor's Plan. (Pl.'s Compl. at ¶¶ 14, 18–20.) Because of this exclusion, Plaintiff claims it was deprived of its constitutional due process right to protect its interest in the Policy. (Pl.'s Resp. at 10–13.) In order to prevail in their motion for summary judgment, Defendants must first prove that

there is no genuine dispute that Plaintiff was not entitled to notice of the commencement of Debtor's Case. Considering the facts in a light most favorable to Plaintiff, Defendants have met this burden, as the evidence is so one-sided that Defendants must prevail as a matter of law.

■■ In a Chapter 11 bankruptcy case, all creditors and interested parties are entitled to notice of the time fixed for filing objections to the debtor's disclosure statement and plan of reorganization. Fed. R. Bankr.P. 3017(a) and (d) (2005). They are entitled to this notice so that they may object to debtor's plan from being confirmed by a bankruptcy court. 11 U.S.C. § 1128(b) (2005). It is axiomatic that notice is the bedrock of any procedurally proper bankruptcy case. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)(the "right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest."). Yet while recognizing the import of notice, the Code attempts to balance its applicability with its practicality. *See* 11 U.S.C. § 102(1)(A) (2005)("notice ... means after such notice as is appropriate in the particular circumstances"). As a result, in interpreting this section of the Code, courts should harmonize the desirability of notice with the judicial economy in requiring a party to serve it.

■ Plaintiff argues that it was entitled to notice of Debtor's Case because it was a "party in interest" as defined by 11 U.S.C. § 1109(b).[4] (Pl.'s Compl. at ¶ 23.) This

---

**3.** Because the Policy was not an executory contract, the Court will not address Defendants' allegations that the Policy expired prior to confirmation, or that the Confirmation Order did not create new contractual rights between Plaintiff and B & G.

**4.** The Court is unpersuaded by Plaintiff's argument that it was the holder of a "claim" as defined by § 101(5) of the Code, due to Debtor's purported contractual obligations under the Policy (duty to provide timely notice for

section loosely defines a "party in interest" as "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee", 11 U.S.C. § 1109(b) (2005), although the list is nonexclusive. Due to the panoptic embrace of "party in interest" status bestowed by the Code juxtaposed with the need of courts to work efficaciously, "determining whether a party enjoys 'party in interest' status is a recurring problem in the bankruptcy arena and requires a case by case analysis." *Wells*, 227 B.R. at 559 (citing, among other authority, *In re River Bend–Oxford Assocs.*, 114 B.R. 111, 113 (Bankr.D.Md.1990), which notes that " '[p]arty in interest is an expandable concept depending on the particular factual context in which it is applied .... [,]' and should be determined 'within the specific reorganization process context for which the determination is sought.' "). Because the inquiry is factually-intense, no bright-line rule has been established. *See id.* (citing *Peachtree Lane Assocs. v. Granader (In re Peachtree Lane Assocs.)*, 188 B.R. 815, 825 n. 8 (N.D.Ill.1995), for the proposition that courts apply a "[we] know a sufficient stake when [we] see it" test)(quoting *Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964)(Stewart, J., concurring)). Thus, the Court must determine "party in interest" status on a case by case basis. *See id.* (citing *In re Amatex*, 755 F.2d 1034, 1042 (3d Cir.1985)); *see also In re Bankest*, 321 B.R. 590, 595 (Bankr.S.D.Fla.2005)(same).

 This jurisdiction follows the general understanding that anyone with a "pecuniary interest, practical stake, or legally protected interest that could be affected by the bankruptcy proceeding" is entitled to "party in interest" status. *Wells*, 227 B.R. at 559; *see also Bankest*, 321 B.R. at

594–95. In making this determination, a court should consider the party's motivation for seeking "party in interest" status. *Bankest*, 321 B.R. at 595. This is especially important given that "[t]he reorganization of a corporation in bankruptcy is a matter between the corporation and its stockholders on the one hand, and its creditors on the other." *Id.* (quoting *In re Rimsat, Ltd.*, 193 B.R. 499, 502 (Bankr. N.D.Ind.1996)). Caution is key, as "overly lenient standards may potentially overburden the reorganization process by allowing numerous parties to interject themselves into the case on every issue, thereby thwarting the goal of a speedy and efficient reorganization." *Id.* (quoting *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 850 (Bankr.S.D.N.Y.1989)).

 It is indubitable, then, that "anyone holding a direct financial interest in the outcome of a case should be able to participate to protect their interest", *id.*, as contemplated by § 1109(b). With the facts before the Court, Plaintiff does not have a direct financial interest in the outcome of the case. Some courts have found that insurers are parties in interest with standing to participate in the Chapter 11 process. This is because "parties with potential responsibility to pay claims against debtors regularly have standing to participate in bankruptcy cases." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 158 (D.N.J. 2005); *see also In re Berkshire Foods, Inc.*, 302 B.R. 587, 589–90 (Bankr.N.D.Ill. 2003); *In re Marcus Hook Dev. Park, Inc.*, 153 B.R. 693, 700 (Bankr.W.D.Penn.1993); *In re Peter DelGrande Corp.*, 138 B.R. 458, 459 (Bankr.D.N.J.1992)("The recipients of notices of potential responsibility have standing to object as parties in interest when the assets of the estate are insuffi-

claims, duty to assist in enforcement of Plain-

tiff's subrogation rights, etc.).

cient to pay the full administrative claim.").

■ In this case, Plaintiff did not have *potential* responsibility to pay under the Policy, but *actual* responsibility to pay some portion of the supplemental insurance policy over and above the primary policy on the Hotel. (Defs.' Mot. to Dismiss at ¶ 2–3; Pl.'s Resp. at 3; Aff. of Wes Sattenfield at ¶ 4; Aff. of Walter Benzija, Ex. A.) The Hotel sustained damage prior to the petition date as a result of Hurricanes Charley and Frances. (Defs.' Mot. to Dismiss at ¶ 8; Pl.'s Resp. at 3; Aff. of Wes Sattenfield at ¶ 10.) Once the Hotel had sustained property damage, Plaintiff was already responsible for payment of whatever claim Debtor asserted. Hence, once the damage affected the property, Plaintiff's obligation to pay originated.[5]

Therefore, Defendants have met their burden of proving no genuine issue of material fact with respect to Plaintiff's entitlement to notice. Whether Plaintiff had been notified of the case or not, Plaintiff had no perspicuous interest in the outcome of Debtor's case.[6] If Debtor's Plan had not been confirmed, Plaintiff would have been obligated to pay for the damage the Hotel sustained as per the terms of the Policy. The intervening bankruptcy had no effect on Plaintiff's responsibility to pay pursuant to the terms of the Policy. The record as a whole, then, simply cannot support a judgment in Plaintiff's favor that it was entitled to notice. As a result, no genuine issue of material fact exists, and

Defendants are entitled to judgment as a matter of law with respect to the issue of notice.

### C. *Defendants did not procure the Confirmation Order by fraud by failing to provide notice to Plaintiff.*

■ The Bankruptcy Code § 1144 states, "On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud." 11 U.S.C. § 1144 (2005). "Fraud is the only ground available for revocation of the confirmation order. The purpose of this limitation is to promote the finality of the confirmation order, which is normally res judicata and which is relied upon by the debtor and other parties in the case." *Dep't of Revenue v. Randolph (In re Randolph)*, 273 B.R. 914, 918 (Bankr.M.D.Fla.2002) (citations omitted)(application of revocation of confirmation order via parallel 11 U.S.C. § 1330(a)); *see also In re Depew*, 115 B.R. 965, 967 (Bankr.N.D.Ind.1989).

■ The Court is cognizant of the negotiation process unique to Chapter 11 cases. As a result of the accommodating nature between the debtor and its creditors, it is antagonistic to the interests of equity to allow party after party the opportunity to "interject themselves into the case on every issue, thereby thwarting the goal of a speedy and efficient reorganiza-

---

5. It is a matter beyond the Court's jurisdiction to determine specifically what that amount is, considering such aspects particular to insurance law such as subrogation rights and insurance coverage disputes. If Plaintiff wants to contest liability, it should seek relief in the proper forum.

6. The Court need not accept this issue as true, as stated by Plaintiff by citing *Shotz v. City of*

*Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003), as it would be unreasonable for the Court to view this evidence in favor of Plaintiff. It would waste judicial resources to permit the parties to present evidence when this forum is clearly malapropos, as a state court would be better suited for resolution of this insurance dispute.

tion." *Bankest,* 321 B.R. at 595. Consequently, the Court notes that "[r]elief under § 1144 is discretionary; the Court may, but need not, revoke the confirmation order if it finds fraud." *Salsberg v. Trico Marine Servs. (In re Marine Servs.),* 337 B.R. 811, 814 (Bankr.S.D.N.Y.2006)(citing 8 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY P 1144.03[4], at 1144–5 to 1144–6 (15th ed. rev.2005)). Furthermore, courts have followed the general rule that "failure to notify a single creditor is not sufficient grounds to set aside a confirmed plan." *In re S.F. Cambridge Assoc.,* 135 B.R. 529, 533 (Bankr.E.D.Tenn.1991)(citing *Solon Automated Servs., Inc. v. Georgetown of Kettering, Ltd. (In re Georgetown of Kettering, Ltd.),* 22 B.R. 312, 317 (Bankr.S.D.Ohio 1982))("It is the opinion of the Court that failure to notify an individual creditor should rarely constitute grounds to set aside a confirmed plan."). This is because "[r]evocation of confirmation is a drastic remedy." *Depew,* 115 B.R. at 967.

■■■ Plaintiff in this case is neither a creditor nor a "party in interest". Defendants had no obligation to notify Plaintiff of Debtor's Case. Therefore, there is no genuine issue of material fact with respect to Plaintiff's claim that the Confirmation Order was procured by fraud. Defendants satisfied their burden of proving that as a matter of law, Plaintiff is not entitled to revocation of the Confirmation Order. Plaintiff failed to present specific facts showing a genuine issue for trial. Taken in toto, the facts before the Court do not justify a finding for Plaintiff.

### D. *The assignment of the Policy was proper.*

■■■ Having concluded that the Policy was non-executory, the Court must address whether Defendants have met their burden of proving that the evidence supporting Debtor's assignment of the Policy without Plaintiff's express consent is so one-sided that Defendants must prevail as a matter of law.[7] Plaintiff claims that "[b]ecause B & G now seeks coverage under the Policy, an actual case or controversy exists." (Pl.'s Compl. at ¶ 22.) Due to the assignment of the Policy against the express language of the anti-assignment clause, Plaintiff asserts it was aggrieved because it now owes a contractual obligation to B & G under the Policy rather than to Debtor. (Pl.'s Compl. at ¶¶ 21–25.)

This argument is specious, at best. It is clear to the Court that Debtor did not assign the *Policy* pursuant to Debtor's Plan, but Debtor's *claim to the Policy proceeds*. While Debtor may have swept Debtor's claim to the Policy proceeds under the umbrella "Executory Contracts

---

7. Even if the Court were to view the facts in a light most favorable to Plaintiff, the non-moving party, and consider the Policy executory, the application of § 365(f) of the Code precludes Plaintiff from arguing that the Policy was assumed and assigned in violation of its terms. According to § 365(f),

> [e]xcept as provided in subsection (c) of this section,
> notwithstanding a provision in an executory contract ... of
> the debtor, or in applicable law, that prohibits, restricts, or
> conditions the assignment of such contract ..., the trustee may

assign such contract....

11 U.S.C. § 365(f)(1) (2005). "Under this subsection, a contract provision or non-bankruptcy law that burdens assignment of an executory contract is trumped by bankruptcy law, and the court ignores the provision in determining the assignment of the contract." *In re Morande Enters.,* 335 B.R. 188, 191 (Bankr.M.D.Fla.2005)(citing *City of Jamestown v. James Cable Partners, L.P. (In re James Cable Partners, L.P.),* 27 F.3d 534, 538 (11th Cir.1994)). As a result, the assignment of the Policy would have been proper despite the anti-assignment clause.

and Unexpired Leases", (Aff. of Walter Benzija, Exs. B and C), it was not Debtor's intention to assign the Policy itself. This is especially evident considering that Debtor's entire plan of reorganization pivoted on absolving its liability to its largest secured creditor, B & G, by way of a sale of the Hotel to B & G. (Defs.' Mot. to Dismiss at ¶ 11; Aff. of Wes Sattenfield at ¶ 13; Aff. of Walter Benzija, Exs. B, C, and D; Aff. of Joseph G. Gillespie at ¶ 3.)

 Both Plaintiff and Defendants agree that Florida law permits a policyholder to freely assign post-loss insurance claims. (Defs.' Mot. to Dismiss at 12–13; Pl.'s Resp. at 25.) This is because "[g]enerally, rights under a contract are assignable." *Prof'l Consulting Servs. v. Hartford Life & Accident Ins. Co.*, 849 So.2d 446, 447 (Fla.2d Dist.Ct.App.2003) (citation omitted). With respect to insurance policies, this is true even if the policy provides an anti-assignment clause. *See, e.g., Better Constr., Inc. v. Nat'l Union Fire Ins. Co.*, 651 So.2d 141, 142 (Fla.3d Dist.Ct. App.1995) (citations omitted). The Hotel sustained damage on or about August 13, 2004 as a result of Hurricanes Charley and Frances. (Defs.' Mot. to Dismiss at ¶ 8; Pl.'s Resp. at 3; Aff. of Wes Sattenfield at ¶ 10.) At that point in time, it was completely permissible for Debtor to assign its property interest in the claim to B & G, as this is in accordance with well-settled Florida law on the assignment of post-loss insurance claims.

There is no genuine issue of material fact with respect to Plaintiff's claim that the Policy was assigned in violation of the terms of the Policy. Defendants satisfied their burden of proving that as a matter of law, Plaintiff is not entitled to declaratory relief that the terms of the Confirmation Order are not binding on Plaintiff. Plaintiff states in its Response that Defendants erroneously argue that Plaintiff "was not entitled to *any* notice of the bankruptcy case, even though [Plaintiff] is still bound by the Confirmation Order." (Pl.'s Resp. at 11)(emphasis in original.) This assertion is a fallacious interpretation of facts. Plaintiff is not only bound by the Confirmation Order, Plaintiff is bound *by the Policy itself.* The intervening bankruptcy filed by Debtor did not release Plaintiff of its pre-existing duty to pay the claim when the damage accrued to the Hotel. Thus, with or without the Confirmation Order, Plaintiff was still required to pay Debtor for its loss, as per the terms of the Policy.

Consequently, Defendants established that there is no genuine issue of material fact with respect to the assignment of the Policy. Plaintiff then failed to bring forth specific facts supporting its allegations. The record is devoid of any facts that could lead to a finding for Plaintiff.[8] Ergo,

---

**8.** Plaintiff makes multifarious arguments regarding the treatment of non-executory contracts by bankruptcy courts. *See* Pl.'s Resp. at 20–24. All of these arguments are misplaced. First, Plaintiff is correct that non-executory contracts "ride through" a bankruptcy case. (Pl.'s Resp. at 20.) That is precisely the case here. Debtor did not amend the terms of the Policy, but merely assigned its right to receive monies pursuant to the post-loss claim that accrued after Hurricanes Charley and Frances but post-petition. As a result, Debtor did not assign the Policy fractionally or *cum onere.* (Pl.'s Resp. at 22–23.) Debtor did not assign the Policy at all. Along the same rationale, Defendants could not possibly have unilaterally altered the terms of the Policy. (Pl.'s Resp. at 23.) The Court is dealing with the assignment of Debtor's benefits under a contract, not the assignment of the contract itself. Additionally, Plaintiff's argument about Debtor's pre-petition property interests further sway in favor of Defendant's arguments. (Pl.'s Resp. at 21.) As of the petition date, it was part of Debtor's property rights to receive payment for the claim it would have made after the damage from Hurricanes Charley and Frances. If Debtor were solvent, the results would have been the same.

this also means that Plaintiff is not entitled to partial summary judgment on Count II of its Complaint, to wit, that it is entitled to declaratory relief that it is not bound by the terms of the Confirmation Order.

### *CONCLUSION*

There is no genuine issue of material fact with respect to any allegation in Plaintiff's Complaint. Defendants have prevailed in convincing the Court that Plaintiff is not entitled to judgment as a matter of law in its quest for relief. Plaintiff was not the non-bankrupt party to an executory contract, thereby entitling it to notice. Therefore, Defendants did not conspire to fraudulently deprive Plaintiff of notice of Debtor's Case. Fundamentally, this means that the Court cannot revoke the Confirmation Order pursuant to § 1144 of the Code. Lastly, Debtor assigned to B & G its right to receive insurance proceeds under the Policy via the Plan. Thus, Plaintiff is not entitled to declaratory relief stating that it is not bound by the terms of the Confirmation Order. Based upon the foregoing, it is

**ORDERED:**

1. Defendants' Motion for Summary Judgment is granted.

2. Plaintiffs' Cross–Motion for Partial Summary Judgment is denied.

---

The same holds true for Plaintiff's argument the Debtor was obliged to follow the Policy provisions pre– and post-petition. (Pl.'s Resp. at 22.) Again, as the Court has continuously noted, Debtor conveyed its property interests in the payment it was due under the claim, and nothing else. As a result, Debtor did not breach any terms of the Policy as a result of its filing Chapter 11.